George ISRAEL, d/b/a Finney Insurance
Agency, Appellant,

v.

FARMERS MUTUAL INSURANCE AS-
SOCIATION OF IOWA, Appellee.

No. 69171.

Supreme Court of Iowa.

Oct. 19, 1983.

L.R. Voigts and Michael W. Thrall of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellant.

Lloyd E. Keith and Joni L. Keith, of Dull, Keith & Beaver, Ottumwa, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER and WOLLE, JJ.

WOLLE, Justice.

In this appeal we address questions of issue preclusion and indemnity arising out of the second of two lawsuits involving an insurance company and its agent. The trial court entered judgment against the insurance agent on his claim for indemnity and we affirm. In order that the issues raised by the agent on appeal can more clearly be understood, it is necessary that we first summarize the underlying factual background and identify the issues that were litigated in the first lawsuit.

Plaintiff George Israel [Israel] owned and operated the Finney Insurance Agency which was licensed and authorized to sell casualty insurance on behalf of defendant Farmers Mutual Insurance Association of Iowa [FMI]. In September of 1979 one of Israel's customers named John Crane requested "full coverage" on a farm combine, and Israel undertook to provide that coverage by forwarding to FMI an application for an endorsement of an existing policy that Crane had with FMI. FMI issued the endorsement to provide the coverage requested in the application. By mistake, however, Israel's employee who prepared the application did not request "upset" coverage even though a farmer's request for "full coverage" for his combine would ordinarily mean to the agent that he wanted coverage for any loss caused by overturn of the combine. Because the application did not request such upset coverage, the endorsement as issued did not cover the risk. About two months later, and during the

term covered by the policy as endorsed, the combine overturned and was extensively damaged. When Israel and FMI refused to pay the loss he sustained, Crane brought an action against both Israel as his agent and FMI as his insurer.

Crane's petition at law alleged that Israel and FMI were both negligent and that the negligence of each was a proximate cause of damages of $10,500. Israel and FMI denied the allegations of negligence and proximate cause. By affirmative defense in his answer Israel requested reformation of the insurance contract. He alleged that he had bound coverage for upset, that FMI would have issued upset coverage except for Israel's mistake, and that the FMI policy endorsement "should be reformed to reflect the intentions of the parties and to provide to the plaintiff [Crane] the coverages contracted for." The issues framed by those pleadings were tried to the court, with jury trial waived.

The trial court found that both defendants had been negligent and that their combined negligence had caused Crane's loss; Israel and FMI were therefore held jointly and severally liable for all of the damages claimed by Crane. In its findings of fact and conclusions of law the trial court clearly delineated the negligence of each defendant. Israel was found negligent for submitting an incomplete application for coverage and for failing to review the change of coverage endorsement himself to be sure that Crane had full coverage. FMI was found negligent in failing to check with Israel to ascertain the type of coverage being requested and thereafter incorrectly assuming that more limited coverage was desired by Crane.

Although neither Israel nor FMI filed a cross-claim against the other in that first lawsuit, both contended during the trial that the entire liability for the loss should fall on the other defendant. Additionally, Israel attempted to establish his allegation that the insurance contract should be reformed. If Israel had successfully obtained reformation, Crane's tort action against Israel would have been directly affected.

The damages Crane contended were proximately caused by negligence would have been reduced by the amount of "upset" loss payable directly to Crane under a reformed FMI policy endorsement.

FMI and Israel each paid one half of the judgment arising out of that first case, satisfying the judgment in full. Israel then filed this second action alleging that he was entitled to indemnity from FMI for the half of the judgment that he had paid to Crane. Israel first alleged in his petition in equity that the upset risk was one that he was authorized to insure on behalf of FMI; he argued that his own mistake in failing to include that risk in the application submitted to FMI constituted passive negligence as contrasted with the active negligence of FMI. In the alternative, Israel alleged that the endorsement should be reformed to reflect the true intentions of the parties and provide coverage for upset, thereby shifting to FMI the responsibility to pay the entire loss. Israel also contended that he was entitled to indemnity based on general equitable principles and the fact that the upset risk was one which FMI would ordinarily have assumed at Israel's request.

Prior to trial the parties agreed upon a stipulated record consisting of all of the pleadings and evidence presented in the first lawsuit and the findings of fact, conclusions of law, and judgment entry in that first case. Based on that streamlined submission of the case, the trial court received briefs and then entered findings of fact, conclusions of law and its decree dismissing Israel's action for indemnity. The trial court rested its decision adverse to Israel on several grounds: first, it held that res judicata barred Israel's claim; second, it held that Israel's negligence was active in nature and not passive, precluding Israel from obtaining indemnity against FMI; and finally, it held that Israel did not have standing to bring an action for reformation of the contract of insurance.

 We address separately and in that same order each of those grounds on which the trial court based its decree adverse to

Israel. Our review of the decree entered in this equity action is de novo. We give weight to the fact findings of the trial court but are not bound by them. Iowa R.App.P. 14(f)(7). We first review the grounds on which the trial court reached its decision, affirming if the decree can be supported on the bases relied upon by the trial court. In reviewing de novo, we will affirm if there is a proper basis for the decree entered by the trial court, even though the reasons for affirming are different than those upon which the trial court relied. *See Citizen's First National Bank v. Hoyt*, 297 N.W.2d 329, 332 (Iowa 1980).

### I. *Res Judicata (Claim Preclusion and Issue Preclusion).*

In its answer to Israel's petition in equity, FMI affirmatively alleged res judicata as a defense. The trial court based its decision for defendant in part upon that affirmative defense, concluding that Israel's action for indemnity was barred by the judgment entered in favor of Crane and against both defendants in the first lawsuit. Israel first argues that res judicata, whether referred to in the sense of claim preclusion or issue preclusion, is inapplicable to the facts and circumstances of this case.

A. *Claim Preclusion.* For several years this court has used the terms "claim preclusion" and "issue preclusion" in place of the generic historical term, res judicata. *See Noel v. Noel,* 334 N.W.2d 146, 148 (Iowa 1983); *Goolsby v. Derby,* 189 N.W.2d 909, 913 (Iowa 1971). *See also* Restatement (Second) of Judgments §§ 18, 19, 27 (1982). We have adopted the terminology of Professor Allan D. Vestal who defined "claim preclusion" to mean that further litigation on the claim is prohibited and "issue preclusion" to mean that further litigation on a specific issue is barred. A. Vestal, *Preclusion/Res Judicata Variables: Parties,* 50 Iowa L.Rev. 27–28 (1964); *see Goolsby v. Derby,* 189 N.W.2d at 913.

Res judicata as claim preclusion applies when a litigant has brought an action, an adjudication has occurred, and the litigant is thereafter foreclosed from fur-

ther litigation on the claim. A. Vestal, *Res Judicata/Preclusion,* p. V–43 (1969). An adjudication in a former suit between the same parties on the same claim is final as to all matters which could have been presented to the court for determination. A party must litigate all matters growing out of its claim at one time rather than in separate actions. *See B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 286 (Iowa 1976). Claim preclusion is not applicable to the facts in this case, however, because neither Israel nor FMI filed a cross-claim against the other for indemnity in the first lawsuit. Such a cross-claim was not compulsory but permissive. Iowa R.Civ.P. 33. Israel's claim for indemnity did not accrue until judgment was entered against him. *See Vermeer v. Sneller,* 190 N.W.2d 389, 392 (Iowa 1971). The right to join related causes of action does not bar subsequent litigation of a distinct cause of action that was not joined. *Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 401 (Iowa 1982). There having been no asserted or required indemnity crossclaim in the first lawsuit, there was no prior adjudication of such a claim and no preclusion of the Israel claim for indemnity against FMI.

B. *Issue Preclusion.* Because FMI alleged as a defense res judicata in its generic sense, we must also determine whether all or part of the trial court's decree may be upheld on the basis of issue preclusion rather than claim preclusion. The four prerequisites for issue preclusion are well established:

(1) The issue concluded must be identical;

(2) The issue must have been raised and litigated in the prior action;

(3) The issue must have been material and relevant to the disposition of the prior action; and

(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Aid Insurance Company (Mutual) v. Chrest,* 336 N.W.2d 437, (Iowa 1983); *Hunter v.*

*City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981).

Issue preclusion was properly invoked by FMI and does apply here with respect to issues central to two of Israel's theories of recovery, his claim based on an active/passive negligence distinction and his theory based on reformation of the policy endorsement. We first address those two theories, then his final contention that he was entitled to a decree of indemnity on general equitable grounds.

## II. *Israel's Active/Passive Negligence Theory.*

■ Israel contends that his negligence was passive and FMI's active in comparison, thereby placing Israel within one of our recognized theories by which one negligent party can obtain indemnity from another. *See Sweeny v. Pease,* 294 N.W.2d 819, 821–23 (Iowa 1980); *Iowa Power and Light Co. v. Abild Construction Co.,* 259 Iowa 314, 323–24, 144 N.W.2d 303, 308–09 (1966). The character of the negligence of Israel and FMI, however, was determined in the first lawsuit. Crane alleged in that first suit and the trial court there found that both Israel and FMI were negligent, that the negligence proximately caused Crane's loss, and that the character of negligence of both was essentially the same. Both Israel and FMI were found negligent in failing to detect the error which followed Israel's submission of an inaccurate application to FMI. Israel's negligent conduct in preparing the application incorrectly was as active in character, if not more so, than was the conduct of FMI which simply failed to notice and correct Israel's error. *See Sweeny v. Pease,* 294 N.W.2d at 823–24, and cases there cited; *cf. Fidelity & Casualty Co. v. Minneapolis Brewing,* 214 Minn. 436, 438, 8 N.W.2d 471, 472–73 (1943) (active character of city's negligence established in first of two lawsuits, precluding indemnity in second).

■ Those questions of negligence and proximate cause were actually raised and litigated in the first lawsuit; each defendant denied and vigorously attempted to re-fute each of those allegations. Those issues were material and relevant to the disposition of the first lawsuit; judgment was entered for Crane and against both defendants based on the court's finding that Crane's damages were proximately caused by the defendants' combined negligence in the issuance of an incorrect policy endorsement. Finally, it is clear that the court's findings of negligence on the part of both Israel and FMI and damages proximately caused by that negligence were necessary and essential to the judgment entered in the first lawsuit. Consequently, FMI established each of the above-listed prerequisites for issue preclusion by including in the stipulated record the court's findings of specific negligent conduct on the part of Israel which caused Crane's damages and which certainly was not passive in comparison with the negligence of FMI. Issue preclusion therefore stands as a barrier to Israel's attempt to relitigate the issues of negligence and proximate cause and thereby recover indemnity on an active/passive negligence theory.

## III. *Israel's Reformation Theory.*

Israel alleged in the alternative that the policy endorsement should be reformed by adding upset coverage "to reflect the true intentions of the parties." He argues that with upset coverage provided in a reformed insurance policy, the entire loss would logically fall upon the insurer FMI, and FMI should therefore be required to indemnify him.

■ Again issue preclusion presents a barrier to Israel's theory of recovery. Each of the four prerequisites for employing issue preclusion is satisfied. The reformation issue is identical, for Israel's answer filed in response to Crane's petition in the first lawsuit alleged the same basis for reformation that is framed by the pleadings in the second case. The issue was not only raised by the pleadings but litigated in the first lawsuit; Israel sought to prove that the parties intended to include upset coverage and would have except for their mutual mistake. Finally, the reformation issue

was not only material and relevant to the disposition of the first case, but its determination was necessary and essential to the resulting judgment. Had the trial court found in favor of Israel on the reformation issue raised by its answer at the first trial, Crane's "upset" damages would have been payable under the insurance contract and not recoverable in the tort action as proximately caused by Israel's or FMI's negligent failure to include such insurance in the policy endorsement.

We need not decide, as did the trial court, that Israel lacked standing to seek reformation in the present case. Israel had full and fair opportunity to litigate his reformation theory in the first case, and relitigation of the issue would be inconsistent with judicial economy and established principles of issue preclusion. *See Hunter v. City of Des Moines,* 300 N.W.2d 121, 123–24 (Iowa 1981).

IV. *Israel's "Equitable Principles" Theory.*

Finally Israel cites *Hunt v. Ernzen,* 252 N.W.2d 445, 447–48 (Iowa 1977), for the proposition that indemnity is founded on equitable principles, placing responsibility "where equity would lay the ultimate burden." Conceding that the facts here do not fall neatly within what he calls "the classic reasons for permitting indemnity," Israel urges that we find him entitled to indemnity in this equity case because FMI would have accepted the risk of upset had that coverage been requested. He argues that FMI's only loss resulting from Israel's error was the difference in policy premiums paid by Crane. Israel cites as his primary authorities the early Iowa case of *State Insurance Co. v. Richmond,* 71 Iowa 519, 32 N.W. 496 (1887), and similar cases from other states. *See, e.g., Pennsylvania Millers Mutual Insurance Co. v. Walton,* 236 Ark. 336, 365 S.W.2d 859 (1963); *United Pacific Insurance Co. v. Price,* 39 Or.App. 705, 593 P.2d 1214 (1979).

The *Richmond* case is distinguishable on its facts. There, the defendant insurance agent had the plaintiff insurer issue an insurance policy on an unoccupied hotel being constructed by the insured; the agent erroneously described it as occupied. After the insured suffered a fire loss and recovered from the insurer on the policy, the insurer sought recovery from the agent in a separate action. The opinion in *Richmond* discloses facts distinguishing that case from this one; there the risk sought to be insured was not greater than that described in the agent's application and the premium paid was greater than if the risk had properly been described. 71 Iowa at 523, 32 N.W. at 498. Moreover, in the *Richmond* case only the insurer was initially held liable to the insured, and that liability arose directly from the policy itself, not from a finding of negligence. The similar cases Israel cites from other states are likewise distinguishable as actions in which the insurer seeking indemnity or contribution from its agent was held liable in an action on the policy (usually one reformed by the court).

We recognize that our *Richmond* case contains language suggesting that only the insurer and not the agent should bear the loss occasioned by an agent's error whenever the undisclosed risk was one the insurer would have accepted for an appropriate premium. 71 Iowa at 524, 32 N.W. at 498–99. We decline to extend the holding or language of that case beyond the facts there involved and do not follow it here. It seems basically unfair and inequitable to require an insurer to bear the entire loss resulting from a risk that an agent erroneously understates or fails to disclose. Casualty insurance involves the spreading of risks by collecting premiums paid by the many who are insured, then reimbursing later the losses some sustain. *See* 1 G. Couch, *Cyclopedia of Insurance Law* § 1:3 (2d ed. 1959). When risks are unknown, premiums on the risks cannot be collected in advance from all who are insured; the only premiums collected would be those paid after a loss by the persons who have first sustained a loss. The amounts paid in losses would necessarily far exceed the few post-loss premiums collected, a result extremely inequitable and contrary to sound

and sensible insurance underwriting principles.

We have reviewed the record de novo and conclude, as did the trial court, that Israel has not established either a legal or equitable basis for obtaining indemnity from FMI. More equitable than the theories suggested by Israel is the result of the first trial under which both Israel and FMI paid Crane one-half of the loss which the insured had sustained.

AFFIRMED.