Paula Post SELCHERT, Lynda Post and Dennis Post, Appellants,

v.

STATE of Iowa, City of Dubuque, and Interstate Power Company, Appellees.

INTERSTATE POWER COMPANY, Third–Party Plaintiff,

v.

Duane R. JASPER and Ralph A. Jasper, Third–Party Defendants.

No. 86–1723.

Supreme Court of Iowa.

March 16, 1988.

Rehearing Denied April 8, 1988.

Allan J. Carew and Robert L. Sudmeier of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellants.

Thomas J. Miller, Atty. Gen., and Robin G. Formaker, Asst. Atty. Gen., Ames, for appellee State.

Barry A. Lindahl, Dubuque, for appellee City of Dubuque.

Les V. Reddick and Stephen C. Crumpe of O'Connor & Thomas, P.C., Dubuque, for appellee Interstate Power Co.

Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

Does Iowa's comparative fault act require joinder of all potential defendants in one action? This is the question presented as plaintiffs appeal from summary judgment entered against them in the second of two personal injury lawsuits arising out of the same automobile accident. Because we are not convinced that Iowa Code chapter 668 reflects a clear legislative intent to override our permissive joinder rules, we reverse and remand for further proceedings.

I. In August 1984, Paula Post Selchert was seriously injured when the automobile in which she was a passenger careened off state Hwy. 20 in Dubuque, Iowa, striking a utility pole owned by Interstate Power Company. Selchert and her parents commenced an action against Duane Jasper, the driver of the vehicle, Ralph Jasper, the owner of the vehicle and Jerry Turner d/b/a Hawkeye Inn, a dramshop.[1] Trial by jury resulted in special verdicts exonerating the dramshop and assessing the comparative fault of Selchert and Duane Jasper at twenty-five percent and seventy-five percent, respectively. Selchert was found to have sustained damages in excess of $1.6 million and judgment was entered accordingly. To date, Selchert's judgment against Jasper remains unsatisfied.

Within days of this jury verdict, Selchert commenced the present action against In-terstate Power Company, the State of Iowa, and the City of Dubuque for their negligence in the placement and maintenance of the utility pole which allegedly created an unreasonable danger to the safety of the traveling public. Selchert also claimed that the State of Iowa and City of Dubuque were liable for their negligence in the unsafe design and signage of Hwy. 20 where the collision occurred.

All three defendants denied the material allegations of the petition and by way of affirmative defense, alleged that the prior judgment and the allocations of fault made there by the jury, operated as a bar to Selchert's claims in the present litigation.[2] Defendants then moved for summary judgment, claiming that the doctrine of res judicata, when read with Iowa's comparative fault act and rules of civil procedure, compelled dismissal of the suit.

After hearing on the motion for summary judgment, the district court ruled as a matter of law that under Iowa Rule of Civil Procedure 25, defendants Interstate Power, State of Iowa, and City of Dubuque were "indispensable parties" to Selchert's prior action; that as "indispensable parties" under rule 25, these defendants became "parties" to the prior action within the meaning of Iowa Code section 668.2 (1985); and that the prior adjudication determined the negligence of all parties, including these defendants, thereby subjecting this further litigation to dismissal under the doctrine of res judicata. Accordingly, the district court sustained defendants' motion for summary judgment and dismissed Selchert's action in its entirety. It is from this ruling that Selchert has appealed.

■ II. Defendants concede that we need not adopt the premise of the trial court in order to sustain its conclusion. *See Kelly v. Iowa Valley Mut. Ins. Ass'n,* 332 N.W.2d 330, 333 (Iowa 1983). We

---

1. Selchert was an unmarried minor at the time of the accident. Her parents claimed damages for loss of consortium. For ease of identification in this opinion, we shall refer to these plaintiffs collectively as Selchert.

2. Defendants also filed third-party petitions for indemnity or contribution against Duane and Ralph Jasper, claims we need not address on this appeal.

agree that on our appellate review of the legal conclusions reached by the district court, we are not bound by its application of law. *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 489 (Iowa 1985). Whether the issue is framed in terms of indispensable parties, res judicata or the broader principles of judicial economy underlying the comparative fault act, the ultimate question remains the same: Is Selchert's present action barred by the prior litigation?

We begin the inquiry with a review of traditional principles governing successive litigation. We then turn to defendants' argument that the principles of res judicata and permissive joinder have been effectively modified by Iowa's adoption of the comparative fault act.

A. Res judicata is the generic term used to refer to a doctrine which embraces both the concepts of claim preclusion and issue preclusion (otherwise known as collateral estoppel.) *Israel v. Farmers Mut. Ins. Ass'n of Iowa*, 339 N.W.2d 143, 146 (Iowa 1983); *Goolsby v. Derby*, 189 N.W.2d 909, 913 (Iowa 1971).

■ Res judicata as claim preclusion applies when a litigant has brought an action, an adjudication has occurred, and the litigant is thereafter foreclosed from further litigation on the claim. *Israel*, 339 N.W.2d at 146. The doctrine is based on the principle that a party may not split or try a claim piecemeal, but must put in issue the entire claim or defense in the case on trial. *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 286 (Iowa 1976). A fundamental feature of the doctrine is that adjudication of the claim in the former suit must have been between the same parties. *Smith v. Updegraff*, 744 F.2d 1354, 1362 (8th Cir.1984); *Israel*, 339 N.W.2d at 146. Insufficient identity of the parties will defeat application of the doctrine. *See Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 402 (Iowa 1982). Clearly the defendants in the case before us are not entitled to the benefit of claim preclusion, for Selchert made no claim against them in the prior litigation.

■ The doctrine of issue preclusion prevents parties to a prior lawsuit from relitigating in a subsequent action issues raised and resolved in the previous suit. *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981). As its name implies, the focus of the doctrine is on identity of issues, not parties. Used defensively, application of the principle means that a stranger to a former judgment (ordinarily, as here, the defendant in the second action) may rely upon that former judgment as conclusively establishing in its favor an issue requiring proof in the subsequent case. *Goolsby v. Derby*, 189 N.W.2d at 913.

Before litigation on an issue will be barred, the party relying on collateral estoppel must establish four prerequisites:

1. The issue concluded must be identical;

2. The issue must have been raised and litigated in the prior action;

3. The issue must have been material and relevant to the disposition of the prior action; and

4. The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Hunter*, 300 N.W.2d at 123.

Selchert readily concedes that at least two major issues in the former trial could be barred from further litigation in the present action, at defendants' election: the extent of Selchert's injuries and her relative fault, as compared to Duane Jasper's, in causing them. Both easily meet the four-part test of *Hunter*.

Central to this appeal, and not so easily resolved, is the issue of causation. Defendants persuaded the trial court that this issue was also fully litigated in the prior action and effectively resolved in favor of these defendants who had the good fortune of not being joined as parties. They theorized that since 100% of the fault relating to Selchert's injuries was allocated to the parties joined in the first action, there was no fault left to be allocated to the defend-

ants in the second action. In support of this argument, defendants convinced the district court that the parties in the second action were really "indispensable parties" to the first, and Selchert's failure to properly join them barred the second action.

This novel blending of rules of res judicata and joinder cannot withstand close scrutiny. First, the trial court erred in its characterization of these defendants as indispensable parties. Iowa Rule of Civil Procedure 25(b) states that a party is indispensable

> if his interest is not severable, and his absence will prevent the court from rendering *any* judgment between the parties before it; or if notwithstanding his absence his interest would *necessarily* be inequitably affected by a judgment rendered between those before the court.

(Emphasis added.) Nothing about the interests of the present defendants prevented the prior court from rendering judgment on Selchert's claim against the driver, vehicle owner or dramshop. The fact that those allocations of fault may affect or even complicate the apportionment of fault in the present action does not make the defendants' interests incapable of severance or inequitably affected. The definition simply does not fit.

Instead of focusing on rule 25, the district court should have turned its attention to the general rule regarding joinder of parties embodied in rule 24:

> Any number of defendants *may be joined* in one action which asserts against them, jointly, severally or in the alternative, any right of relief in respect of, or arising out of the same transaction, occurrence, or series of transactions or occurrences, when any question of law or fact common to all of them is presented or involved.

Iowa R.Civ.P. 24 (emphasis added). This permissive joinder rule reflects the common-law principle that "[o]rdinarily, where a party is not indispensable, a plaintiff should not be forced to sue anyone." *Cowman v. LaVine*, 234 N.W.2d 114, 123 (Iowa

1975); *Fuchs v. Rose*, 186 N.W.2d 621, 623 (Iowa 1971).

B. A second reason to reject defendants' indispensable party theory may be found in the language of the comparative fault act itself. Section 668.2, defining "party," states in its entirety:

> As used in this chapter, unless otherwise required, "party" means any of the following:
>
> 1. A claimant.
>
> 2. A person named as defendant.
>
> 3. A person who has been released pursuant to section 668.7.
>
> 4. A third-party defendant.

The next section of the act governs the procedure for allocating fault. It directs the finder of fact, whether court or jury, to indicate

> [t]he percentage of the total fault allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under section 668.-7.

Iowa Code § 668.3(2)(b).

■ We have repeatedly interpreted these statutory provisions to preclude allocation of fault to nonparties whether they be unidentified, *see Baldwin v. City of Waterloo*, 372 N.W.2d 486, 492–93 (Iowa 1985); dismissed prior to trial, *see Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc.*, 382 N.W.2d 156, 159 (Iowa 1986); known parties to an occurrence from whom no relief was sought, *see Peterson v. Pittman*, 391 N.W.2d 235, 238 (Iowa 1986); or acts of God, *see Renze Hybrids Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 641 (Iowa 1988). In each case, our decision turned on the strict definition of "party" adopted by the legislature in section 668.2 which clearly limits allocation of fault to a claimant, a person named as a defendant, a person released pursuant to settlement, or a third-party defendant.

As we noted in *Baldwin*, the rationale for strict construction of this section was derived in part from comments to the uni-

form comparative fault act after which our own act was patterned:

> [L]imitation to the parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision. It cannot be told with certainty whether that person was actually at fault or what fault should be attributed to him, or whether he will ever be sued, or whether the statute of limitations will run on him, etc. An attempt to settle these matters in a suit to which he is not a party would not be binding on him. Both plaintiffs and defendants will have significant incentive for joining available defendants who may be liable. The more parties joined whose fault contributed to the injury, the smaller the percentage of fault allotted to each of the other parties, whether plaintiff or defendant.

*Baldwin*, 372 N.W.2d at 493 (quoting Unif. Comparative Fault Act § 2, comment 2, 12 U.L.A. 46 (1985 Supp)).

To abandon that rationale and find that the fault of unnamed but "indispensable" parties must be allocated in every tort action, would expand the section 668.2 definition of "party" well beyond our perception of the legislature's intent.

■ Defendants make no attempt to distinguish *Baldwin*, *Payne*, or *Peterson*. Rather, they ask us to follow the lead of the Kansas Supreme Court which summarily overruled its state's procedural rules regarding permissive joinder of claims and parties in its quest to satisfy a perceived legislative intent to fully and finally litigate, in one action, all the rights and liabilities of every person involved in a tort action. *See Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 371, 634 P.2d 1127, 1132 (1981); *Eurich v. Alkire*, 224 Kan. 236, 238, 579 P.2d 1207, 1209 (1978). In response to a certified federal question which noted that there may be procedural as well as strategic reasons why a party is not joined or a claim not presented in a particular action, the Kansas court said:

> Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escape liability.

*Albertson*, 230 Kan. at 374, 634 P.2d at 1132.

Like Kansas, our court has recognized that "the modern and enlightened trend is to combine in one action for trial all claims and actions involving several persons in a single incident." *Hyde v. Buckalew*, 393 N.W.2d 800, 804 (Iowa 1986). But, unlike our colleagues in Kansas, we are unwilling to rewrite our comparative fault act or rules of procedure to achieve this noble objective. Had our legislature intended to include in the section 668.2 definition of "party" all those persons involved in an occurrence, whether or not named as a claimant or defendant, it could easily have done so. Likewise, we perceive no movement to amend our rules of procedure pertaining to joinder of claims and parties. *See* Iowa R.Civ.P. 24, 25, 29, 30, 33, 34 and 35.

Nor by this opinion do we mean to suggest that the legislature hasten to do so. We quote here the observations of one commentator who, though favoring mandatory joinder, compulsory intervention, and other preclusive devices, concedes the real possibility that such methods of achieving judicial economy may carry evils worse than the problem to which they are addressed:

> Use of any one of them may foment assertion of claims that otherwise would never be litigated and thereby increase the adjudication burden of courts. That risk is obvious where compulsory intervention and mandatory joinder are concerned. When the consequences of expanded res judicata privity are perceived, I believe that the device might produce a similar result; interested persons may be prompted to participate in one way or another in judicial resolution of the transaction. Even if the devices do not generate additional claims, they may deter settlement of existing ones. Moreover, they may increase the expenses of the parties, for example, by increasing recovery.

McCoid, *A Single Package for Multi-Party Disputes,* 28 Stan.L.Rev. 707, 728 (1976). The author concludes by suggesting that such risks are difficult, if not impossible, to assess and that a cautious approach to the multiplicity problem should be urged. *Id.*

Having weighed these competing policy issues, we are still not persuaded that by enacting chapter 668 the legislature effectively repealed the rules of civil procedure permitting, but not requiring, joinder of claims and parties at the plaintiff's discretion. Nor are we convinced that these rules and chapter 668 should be read together to require this result. The defendants in this action cannot claim they have been subjected to duplicitous litigation. This is their first time in court on Selchert's claims. If, within the parameters of established rules, Selchert is willing to bear the expense of multiple suits in order to satisfy her claim to full recovery, she should be allowed to do so.

Accordingly, we reverse the judgment of the district court and remand this case for further proceedings.

REVERSED AND REMANDED.