**Diane PIPPERT and Thomas Pippert, Individually and as Parents of minor child Brian Pippert, Plaintiffs,**

v.

**GUNDERSEN CLINIC, LTD., Defendant.**

**No. C02–119 LRR.**

United States District Court, N.D. Iowa, Eastern Division. Waterloo Division.

Jan. 14, 2004.

Chad Andrew Swanson, Thomas L. Staack, Dutton, Braun, Staack, Hellman, Iversen, Waterloo, IA, for Plaintiffs.

Marlene S. Garvis, Jardine, Logan & O'Brien, PLLP, Lake Elmo, MN, for Defendant.

## ORDER

READE, District Judge.

### I. INTRODUCTION

This matter comes before the Court pursuant to Defendant Gundersen Clinic, Ltd.'s ("Gundersen") Motion for Summary Judgment (docket no. 18) and the Motion to Strike or in the Alternative to Amend Complaint Alleging Fraudulent Misrepresentation (docket no. 19) filed by Plaintiffs Diane Pippert and Thomas Pippert (the "Pipperts"). The Pipperts have resisted Gundersen's Motion for Summary Judgment and Gundersen has resisted the Pipperts' Motion to Strike. The Court held a telephonic hearing on both motions on January 6, 2004. Attorney Marlene Garvis appeared on behalf of Gundersen. Attorney Thomas Staack appeared on behalf of the Pipperts.

### II. FACTUAL BACKGROUND

The Pipperts have invoked this Court's jurisdiction inasmuch as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. The Pipperts are Iowa residents. Gundersen is a

nonprofit corporation organized under the laws of the state of Wisconsin with its principal place of business in LaCrosse, Wisconsin.

This is a personal injury action arising out of the treatment of Pipperts' minor son, Brian Pippert, by Dr. Chaudri Rasool at the Palmer Lutheran Health Center ("Palmer Lutheran") in West Union, Iowa. The Pipperts allege in their Complaint that on September 2, 2000, Brian Pippert sought treatment in the emergency room at Palmer Lutheran for injuries to his testicles. Dr. Rasool diagnosed Brian Pippert with a left testicular contusion and ordered treatment consisting of certain medications and ice and then discharged him. The Pipperts further allege that on September 5, 2000, Brian Pippert sought further treatment at Covenant Medical Center in Waterloo, Iowa. During Brian Pipperts' visit to Covenant Medical Center, the physicians performed an ultrasound which revealed torsion to the left testicle. Brian Pippert subsequently underwent an orchiectomy of the left testicle and an orchidopexy of the right testicle. The Pipperts then brought suit against Gundersen Lutheran, Ltd., alleging in their Complaint that Dr. Rasool, an employee of Gundersen Lutheran, Ltd., was negligent in the care he provided to Brian Pippert and that such negligence was the actual and proximate cause of injury to Brian Pippert and to the Pipperts as his parents. The Pipperts alleged that Gundersen Lutheran, Ltd., was vicariously liable for Dr. Rasool's negligence.

Prior to filing the Complaint, the attorneys for the Pipperts engaged in conversations with counsel for Gundersen Lutheran, Inc., regarding the substance and potential settlement of the Pipperts' claim. Counsel for the Pipperts specifically requested from counsel for Gundersen Lutheran, Inc. information on the identity of Dr. Rasool's employer. On July 16, 2002, Chad Swanson, one of the Pipperts' attorneys, sent a letter to Pat Skogland, counsel for Gundersen, which stated the following:

RE: Brian T. Pippert v. Palmer Lutheran Health Center Your File No.: 31301 (1075)

We are in receipt of your July 15th, 2002, faxed letter. Be advised that we have completed the draft of the lawsuit, however, pursuant to your request, we will postpone its filing while settlement negotiations continue in earnest. If those negotiations break down, we will file suit immediately. In the meantime, please confirm for us the fact that Dr. Rasool is employed by Gundersen Lutheran, Inc. Thank you for your attention to this matter and we look forward to hearing from you yet this week.

On July 31, 2002, Ms. Skoglund responded to Mr. Swanson's letter with the following e-mail message:

This will confirm my voice mail to you that Dr. Rasool is employed by Gundersen Clinic, Ltd. at the outpatient clinic in West Union, Iowa. He is not employed by Palmer Lutheran. Gundersen Clinic, Ltd., has its principal offices at 1836 South Avenue, La Crosse, WI 54601. Dr. Rasool was working in the ER at Palmer Lutheran when he saw your client.

Please let me know if you need any further information. I assume you received my voice mail last week with our settlement offer of $30,000.00 and passed that along to your client.

I will wait to hear from you.

The parties were unable to settle the Pipperts' claim and the Pipperts subsequently filed suit in this Court on August 5, 2002. The Pipperts named as the defendant in their Complaint Gundersen Lutheran, Ltd. On September 6, 2002, Gundersen Lutheran Ltd., filed its Statement

of Interest and specifically identified the defendant therein as Gundersen Lutheran, Inc. The Statement of Interest included information about the relationship of Palmer Lutheran to Gundersen and to Gundersen Lutheran, Inc. On October 1, 2002, Gundersen Lutheran, Ltd., filed its Answer and specifically advised the Pipperts' counsel that the Pipperts had named the wrong party as the defendant in the lawsuit. The Answer alleged as an affirmative defense that the Pipperts had failed to name Dr. Rasool and Palmer Lutheran as indispensable parties to the action. Gundersen Lutheran, Ltd., also asserted in its Answer that at all times material to the matter, Dr. Rasool was an employee of Gundersen Clinic, Ltd.

On October 25, 2002, the Pipperts moved to amend their Complaint to name Gundersen Clinic, Ltd., as the proper party defendant. On November 8, 2002, Gundersen Lutheran, Inc. filed a resistance to the Pipperts' motion, asserting that the Pipperts' had sufficient notice that Gundersen Clinic, Ltd., was the proper party defendant when the Pipperts filed their lawsuit. Gundersen Lutheran, Inc., contended the Pipperts therefore should be precluded from amending their Complaint to name the proper party defendant because the statute of limitations on their claims had run. Gundersen asserted the Pipperts should not be excused from their failure to name Gundersen as the defendant when they had actual notice before they filed their Complaint that Gundersen was in fact the proper party defendant. By Order dated November 8, 2002, Chief Magistrate Judge Jarvey granted the Pipperts' Motion for Leave to Amend their Complaint to name Gundersen as the proper party defendant. On November 12, 2002, the Pipperts filed an Amended Complaint naming Gundersen as the defendant.

On February 23, 2003, Gundersen's counsel learned for the first time during a meeting with Dr. Rasool that Dr. Rasool was not working in his capacity as a physician with Gundersen when he provided services to Brian Pippert on September 2, 2000. Dr. Rasool advised counsel for Gundersen during this meeting that when he treated Brian Pippert on September 2, 2000, he was moonlighting as a physician with Palmer Lutheran pursuant to a Personal Services Agreement (the "Agreement") with Palmer Lutheran.

Palmer Lutheran is an Iowa hospital and a non-profit corporation organized under the laws of the State of Iowa. It has a loose affiliation with Gundersen Lutheran, Inc., and Gundersen Lutheran, Inc., has the right to select one member of Palmer Lutheran's Board of Directors. Gundersen Lutheran, Inc., receives indirect benefits through its affiliation with Palmer Lutheran in that Gundersen patients receive treatment at Palmer Lutheran. Dr. Rasool's Agreement with Palmer Lutheran provides that Palmer Lutheran will give to Gundersen, on a monthly basis (1) reports detailing necessary volume and billing data as required by Gundersen for purposes of monitoring Dr. Rasool's performance; (2) gross billings; (3) number of patient visits (excluding nurse only visits); and (4) relative value units. The Agreement further requires that Palmer Lutheran maintain "such books and records as are necessary to establish to the satisfaction of the Physician and his employer Gundersen Clinic, Ltd., the proper discharge of the Hospital's accounting obligations hereunder including, without limitation, those relating to the proper billing of Medicare, Medicaid, insurance carriers and other third-party payors for the services of the Physician." The terms of the Agreement further require that Palmer Lutheran give to Gundersen "access at reasonable times and as often as may reasonably be requested" to Palmer Lutheran's offices to inspect its books and accounts to the extent they

relate to matters governed by the Agreement and to "discuss its affairs, finances, and accounts with its officers with respect to such matters." Under the terms of the Agreement, Gundersen is to provide malpractice insurance for Dr. Rasool and Palmer Lutheran is to provide its own malpractice insurance. The Agreement provides that each party is to indemnify the other for "any and all claims, demands, causes of action, losses, liabilities, court costs and attorney's fees arising from or relating to their respective actions and omissions whether intentional, negligent or otherwise." Dr. Rasool is considered an independent contractor of Palmer Lutheran under the terms of the Agreement.

On March 21, 2003, Gundersen filed its Answer to the Pipperts' Amended Complaint. Gundersen asserted in its Answer, for the first time, that "at all times pertinent to this case and, in particular, the date and time when Dr. Rasool was diagnosing and treating Brian Pippert, he was moonlighting at, paid by, and acting as an agent for Palmer Lutheran Health Center, Inc., not Gundersen Clinic, Ltd." The deadline for motions to add parties had expired on February 27, 2003 and the deadline for motions to amend pleadings was set to expire on March 27, 2003. The Pipperts subsequently filed a Motion to Amend Deadlines Re: Additional Parties and Pleadings. The Pipperts requested such extension because the information regarding Dr. Rasool's employment by Palmer Lutheran provided by Gundersen for the first time in its March 21, 2003 Answer "may result in [the Pipperts] seeking to add an additional party to the litigation or may result in [the Pipperts] seeking to amend their Complaint further, depending upon what facts [the Pipperts] discovered." On April 2, 2003, Magistrate Judge Jarvey granted the Pipperts' Motion and extended the deadline for motions to amend pleadings for ninety days and the deadline for adding additional parties until June 25,

2003. The Pipperts deposed Thomas Taylor, an in-house attorney for Gundersen, on June 18, 2003. Mr. Taylor testified that, despite what he characterized as an appropriate investigation by Gundersen's outside counsel and by Gundersen employees, neither Gundersen nor its outside counsel was aware that Dr. Rasool had been moonlighting pursuant to the Agreement at the time he treated Brian Pippert. The Pipperts deposed Dr. Rasool on June 16, 2003 and he testified that nobody had asked him prior to February 23, 2003 whether he was providing services at Palmer Lutheran on behalf of Gundersen or as an employee of Palmer Lutheran. The Pipperts did not seek to amend their Complaint or to add any parties to this lawsuit prior to the deadlines as extended by Magistrate Judge Jarvey.

On August 29, 2003, Gundersen filed the instant Motion for Summary Judgment. On September 2, 2003, the Pipperts filed the instant Motion to Strike Gundersen's Amended Answer or, In the Alternative to Amend their Complaint Alleging Fraudulent Misrepresentation.

### III. STANDARD OF REVIEW

Summary judgment is appropriate only when the record, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir.1997) (citing *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir.1996)). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit

under the governing law." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999). In considering a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus.*, 475 U.S. at 587, 106 S.Ct. 1348. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Id.*

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 394 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## IV. ANALYSIS

### A. Should Gundersen be Equitably Estopped from Now Asserting it is Not the Proper Party Defendant?

As an initial matter, the Pipperts assert in response to Gundersen's Motion for Summary Judgment on the issue of whether Gundersen can be held vicariously liable for Dr. Rasool's alleged negligence in this case that Gundersen should be equitably estopped from raising this defense at this point in the litigation. In support of this contention, the Pipperts point out that counsel for Gundersen represented to the Pipperts on no less than three occasions that Dr. Rasool was employed at all times pertinent to the litigation by Gundersen. The Pipperts further note that counsel for Gundersen affirmatively stated in Ms. Skoglund's e-mail that Dr. Rasool was *not* employed by Palmer Lutheran. Gundersen argues in response that the Pipperts are not entitled to the protection of the doctrine of equitable estoppel because the Pipperts knew or should have known all along that Palmer Lutheran is an indispensible party to this lawsuit. Gundersen asserts that it indicated in its initial Answer to the Pipperts' Complaint that both Dr. Rasool and Palmer Lutheran are indispensible parties to the suit and again in its Amended Answer. Gundersen maintains this put the Pipperts on notice that they should name Palmer Lutheran as a party to the suit.

Under Iowa law, the substantive law which the Court is to apply in this diversity jurisdiction case under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the doctrine of equitable estoppel is "designed to prevent fraud and injustice and may come into play whenever a party cannot in good conscience gainsay his prior acts or assertions." *DeWall v. Prentice*, 224 N.W.2d 428, 431 (Iowa 1974) (citing *Dart v. Thompson*, 261 Iowa 237, 154 N.W.2d 82 (1967); McClintock on Equity, § 31 at 79–80 (2d ed.1948)). The elements of equitable estoppel are well established:

There must be conduct amounting to false representation or concealment, and a party relying thereon must be thereby misled into doing or failing to do something he would not otherwise have done or omitted. A party asserting this defense has the burden to establish all essential elements thereof by clear, convincing and satisfactory proof. Nothing less will suffice.... Also, despite defendants' claim to the contrary, one must knowingly take a position with the inten-

tion it be acted upon, and that there be reliance thereon by another to his prejudice.

*Id.* at 430–31, 154 N.W.2d 82 (quoting *Holden v. Constr. Mach. Co.,* 202 N.W.2d 348, 355–56 (Iowa 1972)) (internal quotations omitted).

The Pipperts assert the doctrine of equitable estoppel should apply in this case to prohibit Gundersen from now claiming it is not the proper party defendant because: (1) Gundersen falsely represented to the Pipperts on no less than three occasions that Gundersen and not Palmer Lutheran was Dr. Rasool's employer; (2) Gundersen knew the Pipperts would rely on these false representations; (3) the Pipperts did in fact rely upon Gundersen's false representations in amending their original complaint to name Gundersen as the party defendant and in dismissing their state court cause of action because they believed they had established federal subject matter jurisdiction. The Pipperts contend there is clear, convincing and satisfactory evidence of each of these elements in the record.

██ The Court's review of the record leads it to conclude that the doctrine of equitable estoppel does not apply in this case. The Court first notes that the evidence in the record reveals that, at the time Gundersen's counsel was making the representations to the Pipperts regarding Dr. Rasool's employment status, Gundersen's counsel believed such assertions to be true. While the Court is perplexed as to why Gundersen's counsel did not bother to ask Dr. Rasool about the capacity in which he was treating patients at Palmer Lutheran, the fact remains that Gundersen's counsel did not know at the time the assertions they were making were false. Furthermore, even if Gundersen did in fact know such assertions to be false, the Pipperts' justifiable reliance on Gundersen's assertions ended when Gundersen

filed its Answer to the Pipperts' Amended Complaint. It became clear to the Pipperts when Gundersen filed its Amended Answer that Dr. Rasool was treating patients at Palmer Lutheran pursuant to the Agreement with Palmer Lutheran. At this time, the Pipperts filed a motion to extend the deadlines for adding additional parties and for amendment to pleadings for the very purpose of ensuring they had named the proper party defendant in this lawsuit. Despite their knowledge that Dr. Rasool was acting pursuant to an Agreement with Palmer Lutheran when he provided services to Brian Pippert, the Pipperts did nothing to amend their pleadings in an effort to ensure they had named the proper party defendant. In light of the foregoing, the Court finds the Pipperts have failed to prove by clear, convincing and satisfactory evidence the elements of their claim that Gundersen should be equitably estopped from asserting it is not the proper party defendant in this case.

### B. Was Dr. Rasool Acting as an Employee of Gundersen When He Treated Brian Pippert?

Gundersen moves for summary judgment on the Pipperts' negligence claim on the grounds that it cannot be held vicariously liable for Dr. Rasool's negligence. Gundersen cites as the basis for this contention that Dr. Rasool was providing services at Palmer Lutheran pursuant to the Agreement with Palmer Lutheran when he treated Brian Pippert. Gundersen maintains Dr. Rasool did not treat Brian Pippert as an employee of Gundersen, was not acting within the scope of his employment with Gundersen, and thus, as a matter of law, Gundersen cannot be held vicariously liable for Dr. Rasool's alleged negligence. The Pipperts maintain in response that there is a genuine issue of material fact regarding the issue of whether Gundersen and Dr. Rasool continued to enjoy an em-

ployer/employee relationship while Dr. Rasool performed services for Palmer Lutheran under the Agreement.

Under Iowa law, a corporation is liable for the tortious conduct of its employees committed within the scope of their employment. *Bethards v. Shivvers, Inc.*, 355 N.W.2d 39, 45 (Iowa 1984). *See also Merchants Nat'l Bank of Cedar Rapids v. Waters*, 447 F.2d 234, 238 (Iowa 1971). Whether an employer/employee relationship exists cannot be determined by looking at one particular fact or circumstance, but must instead be examined in light of all the circumstances of a given case. *Heinz v. Heinz*, 653 N.W.2d 334, 343 (Iowa 2002). In making the determination of whether such relationship exists, a court looks foremost to the intention of the parties. *Id.* (citing *Henderson v. Jennie Edmundson Hosp.*, 178 N.W.2d 429, 431 (Iowa 1970)). Courts may also consider (1) the actual relationship between the parties; (2) the economic interdependence of such parties; *id.* (citing 30 C.J.S. *Employer–Employee* § 6, at 20); and (3) the fact of compensation and the manner of paying it. *Id.* (citing *Uhe v. Cent. States Theatre Corp.*, 258 Iowa 580, 139 N.W.2d 538, 539 (1966); 30 C.J.S. *Employer–Employee* § 11, at 24). Usually, the question of whether an employer/employee relationship exists is a question of fact to be decided by the jury. *Id.* (citing *Fletcher v. Apache Hose & Belting Co.*, 519 N.W.2d 839, 840 (Iowa Ct.App.1994); *Ctr. Mut. Ins. Co. v. Thompson*, 618 N.W.2d 505, 511 (N.D.2000); *Stenvik v. Constant*, 502 N.W.2d 416, 420 (Minn.App.1993)). However, where the evidence of such relationship in the record is insufficient, a court may decide as a matter of law that there are insufficient facts for the jury to decide the issue. *Id.* (citing *Vasconez v. Mills*, 651 N.W.2d 48, 52 (Iowa 2002)) ("if, at the close of all evidence, the record is insufficient to support a party's theory of recovery or defense, the court need not submit the theory to the jury and may direct a verdict on the issue as a matter of law").

The Pipperts contend there is a genuine issue of material fact regarding the issue of whether Dr. Rasool was acting as an employee of Gundersen when he treated Brian Pippert in the emergency room at Palmer Lutheran. Regarding the intent of the parties, the Pipperts assert Dr. Rasool's execution of the Agreement with Palmer Lutheran for the provision of his services does not establish that Gundersen intended for its employment relationship with Dr. Rasool to cease while he provided services for Palmer Lutheran. In support of this contention, the Pipperts cite to the terms of the Agreement which provide (1) Gundersen agreed to maintain Dr. Rasool's malpractice insurance while he treated patients at Palmer Lutheran; and (2) Gundersen required Dr. Rasool to adhere to Gundersen's standards of care and conduct when performing work under the Agreement. The Pipperts also point to the Agreement's silence on the issue of whether Dr. Rasool's employment with Gundersen ceased during his provision of services for Palmer Lutheran as evidence that the parties intended for the employer/employee relationship to remain in place during Dr. Rasool's provision of services to Palmer Lutheran under the Agreement. The Pipperts admit that Palmer Lutheran, and not Gundersen, paid Dr. Rasool for his services under the Agreement. The Pipperts point out, however, that Gundersen and Dr. Rasool were not entirely economically independent of one another when Dr. Rasool treated patients at Palmer Lutheran. The Pipperts assert Gundersen took the work performed by Dr. Rasool and the income he generated while providing services at Palmer Lutheran into account when Gundersen reviewed Dr. Rasool's work performance and determined his clinic salary and that this fact supports the existence of an employer/employee rela-

tionship. Further, the Pipperts point out that Gundersen paid Dr. Rasool's malpractice premiums during his provision of services at Palmer Lutheran, which they contend goes to show Gundersen provided some form of compensation to Dr. Rasool while he worked at Palmer Lutheran. The Pipperts maintain that Gundersen required that Dr. Rasool get permission from the Medical Vice President for Gundersen before he could enter into the Agreement with Palmer Lutheran. The Pipperts contend this fact supports the proposition that Gundersen had the right to control Dr. Rasool's relationship with Palmer Lutheran and therefore weighs in favor of the existence of the employer/employee relationship between Gundersen and Dr. Rasool.

As an initial matter, the Court notes the Pipperts cited the following as the "predominant factors" to review and use as an aid when deciding the nature of an employer/employee relationship: (1) the right of selection, or to employ at will; (2) the responsibility for payment of wages by the employer; (3) the right to discharge or terminate the relationship; (4) the right to control the work; and (5) the identity of the employer as the authority in charge of the work or for whose benefit it is performed. However, the Iowa Supreme Court has opined these factors:

> ... have primary force in an analysis to determine whether a person is an employee versus an independent contractor. They have not been articulated as factors to consider in deciding whether an employer/employee relationship exists. If these factors are to be considered at all, it is merely as an aid in determining the nature of the relationship.

*Heinz*, 653 N.W.2d at 343 (citing *Iowa Mutual Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542 (Iowa 1997)). The Court therefore will consider as evidence of the employer/employee relationship primarily those factors set forth by the Iowa Supreme Court in *Heinz:* (1) the intent of the parties; (2) relationship between the parties; (3) the economic interdependence of the parties; and (4) the fact of compensation and the manner of paying it. *See* 653 N.W.2d at 342.

 The Court finds, viewing the evidence in the light most favorable to the Pipperts, that they have produced evidence sufficient to create a genuine issue of material fact with respect to whether Dr. Rasool remained an employee of Gundersen when he performed services for Palmer Lutheran pursuant to the terms of the Agreement. The Agreement provides that Dr. Rasool acted as an independent contractor and not as an employee of Palmer Lutheran when he provided services thereunder. Gundersen agreed to provide medical malpractice insurance for Dr. Rasool even when he provided services at Palmer Lutheran under the Agreement. Thus, Gundersen provided to Dr. Rasool a form of compensation for his services under the Agreement in addition to that provided to him by Palmer Lutheran. Gundersen asserted during the hearing on this Motion there is evidence in the record Palmer Lutheran and not Gundersen paid for Dr. Rasool's malpractice insurance while he was moonlighting at Palmer Lutheran. Mr. Taylor, counsel for Gundersen, testified in deposition that it was his belief Palmer Lutheran and not Gundersen paid for Dr. Rasool's malpractice insurance while he was providing services pursuant to the Agreement. The Court finds, given the express language of the Agreement, there is at the very least a genuine issue as to which entity did in fact pay for Dr. Rasool's malpractice insurance. Further evidence of an intent that Dr. Rasool remained an employee of Gundersen during his provision of services at Palmer Lutheran is that Gundersen also maintained con-

trol over the way in which Dr. Rasool provided services. The terms of the Agreement required that Dr. Rasool "[c]omply with all institutional policies and procedures adopted by the Hospital and by the Physician's employer, Gundersen Clinic, Ltd., relating to the provision of quality care to patients in rural Iowa." The Court finds this evidence sufficient to create a jury issue with respect to whether Gundersen and Dr. Rasool intended for the employment relationship between them to cease when Dr. Rasool provided services at Palmer Lutheran. The Court also finds there is evidence from which a reasonable juror could conclude that the relationship between Dr. Rasool and Gundersen, even while providing services at Palmer Lutheran, is consistent with an employer/employee relationship given the measure of control granted to Gundersen by the terms of the Agreement. The Court further concludes a genuine issue of fact exists on the issue of whether Gundersen and Dr. Rasool were economically interdependent on one another. The Agreement provides that Gundersen was to pay Dr. Rasool's malpractice premiums during his provision of services at Palmer Lutheran. Gundersen admits that it took the services provided by Dr. Rasool into account when evaluating Dr. Rasool's performance. Thus, a reasonable juror could conclude that Gundersen and Dr. Rasool were not entirely independent of one another. Further, while Palmer Lutheran paid Dr. Rasool for the services he provided, a factor which weighs in favor of an employer/employee relationship between Dr. Rasool and Palmer Lutheran, the Court cannot ignore the fact that the terms of the Agreement require that Gundersen pay for Dr. Rasool's malpractice insurance. If Gundersen did in fact pay for such insurance coverage, a reasonable juror could conclude that Gundersen also paid to Dr. Rasool a form of compensation under the Agreement. The Court finds viewing the evidence in the light most favorable to the Pipperts and making all reasonable inferences in their favor that the Pipperts have created a genuine issue of material fact with respect to the existence of an employer/employee relationship between Gundersen and Dr. Rasool when he provided services to Brian Pippert at Palmer Lutheran. The Court therefore declines to grant summary judgment in favor of Gundersen on this issue.

### C. Are Palmer Lutheran and Dr. Rasool Indespensible Parties Under Federal Rule of Civil Procedure 19(b) Without Whom this Litigation Cannot Proceed?

Gundersen next asserts it is entitled to summary judgment on the Pipperts' claims herein because the Pipperts have failed to name Palmer Lutheran and Dr. Rasool as parties to the lawsuit. Gundersen maintains that the Iowa Comparative Fault act governs this case and, as such Palmer Lutheran and Dr. Rasool are indespensible parties under Federal Rule of Civil Procedure 19(a). In support of this contention, Gundersen argues it would be prejudicial to Gundersen not to have these parties in the action because, in their absence, Gundersen could be allocated fault for which it was not responsible. Gundersen further asserts that, in their absence, the Court will be unable to shape its judgment to lessen any prejudice arising from nonjoinder because it will have no means to prevent an inequitable allocation of fault to Gundersen and any judgment rendered in the absence of these parties may be inadequate based on the jury's allocation of fault. Finally, Gundersen asserts the Court must determine whether the plaintiff has an adequate remedy if the action is dismissed for failure to join an indispensible party and, in this case, the Pipperts do in fact have an adequate remedy because they can proceed in state court. Gundersen therefore urges the Court to dismiss

this action to allow the Pipperts to name the proper parties and proceed in state court.

Federal Rule of Civil Procedure 19(a) governs the joinder of indespensible parties to a lawsuit and provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

Fed.R.Civ.P. 19(a). Thus, Rule 19(a) "requires joinder [of a party] when the presence of the party to be joined is essential to the litigants' complete relief, or when the party to be joined must be present to protect its own or another party's interests." *DeWit v. Firstar Corp.*, 879 F.Supp. 947, 991 (N.D.Iowa 1995) (quoting *Boulevard Bank Nat'l Assn. v. Philips Med. Sys. Int'l*, 15 F.3d 1419, 1422–23 (7th Cir.1994)) (internal quotations omitted). If a court finds that a party is a necessary party under Rule 19(a), it may dismiss the action if, after considering the four additional factors set forth in Rule 19(b), the court determines the party is an indespensible party without whom the litigation should not go forward. *Id.*

█ The Court finds neither Palmer Lutheran nor Dr. Rasool is a necessary party to this case. Complete relief can be had between Gundersen and the Pipperts in the absence of Palmer Lutheran and Dr. Rasool and neither of these parties must be made part of the suit to protect the interests of such party. The Court notes that the Iowa Supreme Court addressed the issue of whether all parties involved in an incident that gives rise to a lawsuit must be joined in the same suit under the Iowa Comparative Fault Act in *Selchert v. State of Iowa*, 420 N.W.2d 816, 821 (Iowa 1988). The court held the Iowa Comparative Fault Act does not require that a plaintiff join in an action all persons involved in the occurrence which gives rise to a cause of action by the plaintiff. *Id.* The court opined:

Having weighed these competing policy issues, we are still not persuaded that by enacting chapter 668 [of the Iowa Code] the legislature effectively repealed the rules of civil procedure permitting, but not requiring, joinder of claims and parties at the plaintiff's discretion. Nor are we convinced that these rules and chapter 668 should be read together to require this result. The defendants in this action cannot claim they have been subjected to duplicitious litigation. This is their first time in court on [plaintiff's] claims. If within the parameters of established rules, [plaintiff] is willing to bear the expense of multiple suits in order to satisfy [plaintiff's] claim to full recovery, [plaintiff] should be allowed to do so.

*Id.* at 821. Thus, in light of the Court's finding that neither Dr. Rasool nor Palmer

Lutheran is a necessary party to this case and the Iowa Supreme Court's clear pronouncement in *Selchert* that the Iowa Comparative Fault Act does not require joinder in one action of all parties involved in an incident giving rise to a lawsuit, the Court declines to grant summary judgment in Gundersen's favor on this issue.

### V. CONCLUSION

In light of the foregoing, Gundersen's Motion for Summary Judgment is denied. The Court's ruling on the issues addressed above obviates the need for a ruling on the Pipperts' Motion to Strike or to Amend Complaint Alleging Fraudulent Misrepresentation. Accordingly, IT IS ORDERED:

1. Gundersen's Motion for Summary Judgment (docket no. 18) is denied.

2. The Pipperts' Motion to Strike or to Amend Complaint Alleging Fraudulent Misrepresentation (docket no. 19) is denied as moot.

3. The parties are encouraged to explore settlement of this matter.

**IT IS SO ORDERED.**