Harry **BETHARDS** and M. Elouise Bethards, Appellees,

v.

**SHIVVERS, INCORPORATED,** f/k/a Shivvers Enterprises, Incorporated, Charles Shivvers, and Douglas Shivvers, Appellants.

Nos. 2–68843, 2–69492.

Supreme Court of Iowa.

Aug. 22, 1984.

UHLENHOPP, Justice.

The central question in this appeal is whether the evidence of the tort of inten-

tional infliction of severe emotional distress is sufficient for submission to a jury. We view the evidence in the light most favorable to the plaintiffs, who prevailed at trial. *Dickerson v. Young*, 332 N.W.2d 93, 96 (Iowa 1983).

Harry Bethards and M. Elouise Bethards, spouses, own a farm west of Centerville, Iowa. During the winter of 1978–1979, the Bethards gave permission to a neighbor, Ernest Houston, to haul 1500-pound bales of hay from his land across a field in the southeast portion of the Bethards' farm on condition that their field only be so used as long as the ground remained frozen. The only other access to the bales was a two-mile trek over rough terrain that was nearly impassable because of snow. The access across the Bethards' farm was flat and only a quarter-mile in length from the bales to a county road. Harry Bethards plowed a path through the snow for Houston to use.

In January 1979, Houston sold approximately eighty bales of the hay to Douglas Shivvers, who managed several farms owned by his father, Charles Shivvers. Charles was also president, majority stockholder, and manager of Shivvers, Incorporated (corporation), which at the time in question was known as Shivvers Enterprises, Incorporated, a manufacturer of grain drying equipment. Houston informed Douglas that the field in question could only be used as long as the ground remained frozen.

On March 1, 1979, some fifteen bales of hay were moved from Houston's land across the Bethards' field. The ground was still frozen, and the Bethards made no complaint.

On March 19, 1979, Jack Hyde was working with sheet metal at the corporation, where he was employed. As happened from time to time, Douglas approached Hyde and requested that he perform farm work. Hyde, based on standing instructions from Charles Shivvers that he help with farm work whenever Douglas so requested, put aside his sheet metal project and proceeded to the Bethards' property.

He used a Steiger tractor to transport some twenty bales from Houston's property to a gate at the southeast corner of the Bethards' field. This took him across the Bethards' land.

The ground at this time was no longer frozen and the Steiger cut deep ruts in the Bethards' field. Hyde testified that as he removed the hay he drove in one rut as many times as possible. He cut three or four sets of ruts that ranged in depth from six to twenty-four inches. Many ruts quickly filled with water. The damaged ground included something less than three acres of crop land and hay field. Evidence put the resulting crop loss at $718.88 and damage to the field at $310.13 for repair, for a total loss of $1129.01. The Bethards were unaware of the activity in their field until so informed by a neighbor. Harry Bethards then went to the field and asked Hyde to leave. Hyde did so, without the tractor or the remaining bales.

The temperature on March 19 was approximately forty degrees. Hyde said he knew when he left the corporation that day the ground was likely to be soft. He testified that after arriving at the Bethards' field he could see the ground was not frozen, but that he did not know whether or not it would support the Steiger. He did say "[a]nyone that's ever operated a tractor in Iowa in March and April should know" what damage would be done to land in the same condition as the Bethards' field.

Douglas did not go to the Bethards' field that day. He testified he realized some damage would be done to the field although he did not know the extent the damage would be, but he needed the hay. The next day the Shivvers went to the field to retrieve the tractor.

One evening in April 1979, Douglas approached the Bethards at their home with a settlement proposal. He offered to disc the damaged land if the Bethards would seed and fertilize it. Harry Bethards rejected the offer and said he wanted $3000. Each man deemed the offer of the other to be unreasonable. During an ensuing argu-

ment, Douglas called the Bethards' property an "old junk farm."

On May 1, 1979, the Shivvers again returned to the Bethards' land. They removed a chain that the Bethards had strung across the gateway, and loaded the bales that had not been removed on March 19. Further damage was caused to the Bethards' field, though not as severe as the damage on March 19. While the Shivvers were removing their hay on May 1, Harry Bethards spotted them and called the sheriff. The sheriff arrested the Shivvers and their employees and charged them with third-degree criminal mischief.

The Bethards testified that as a result of the entire incident they were placed under severe emotional strain. Harry Bethards stated that every time the incident came to mind he became "shook up, mad, and nervous, and muscle-bound." Several witnesses said Bethards would get quite mad and his muscles would "quiver." Elouise Bethards said she was upset because she now thought people believed she owned a "junk farm." She also worried a great deal about her husband. She testified the couple spent sleepless nights because of what the Shivvers had done, and that she missed four and possibly five days of work in consequence. She described her condition thus:

Q. You indicated your stomach got tight, a little upset? A. Yes, about like it is now.

Q. I take it you have never got so sick that you had to go to the restroom? A. No, I felt that way a few times.

A social acquaintance said Harry Bethards reacted "just like anybody else when they get mad," and that the Bethards never missed a social event because of their distress. Neither of the Bethards sought the aid of a physician.

The case was submitted to the jury on two counts: trespass, and intentional infliction of severe emotional distress. The jury found for the Bethards and against the corporation and Charles and Douglas Shivvers on both counts and awarded the following damages:

**To Harry Bethards:**

| | |
|---|---|
| For trespass— | |
| Actual damages | $ 3,900.00 |
| Punitive damages | |
| From corporation | 7,000.00 |
| From Charles | 7,000.00 |
| From Douglas . | 7,000.00 |
| For emotional distress— | |
| Actual damages | $15,000.00 |
| Punitive damages | |
| From corporation | 20,000.00 |
| From Charles | 20,000.00 |
| From Douglas | 20,000.00 |
| Total | $99,900.00 |

**To Elouise Bethards:**

| | |
|---|---|
| For trespass— | |
| Actual damages | $ 3,000.00 |
| Punitive damages | |
| From corporation | 4,000.00 |
| From Charles | 4,000.00 |
| From Douglas | 4,000.00 |
| For emotional distress— | |
| Actual damages | $15,000.00 |
| Punitive damages | |
| From corporation | 10,000.00 |
| From Charles | 10,000.00 |
| From Douglas | 10,000.00 |
| Total | $60,000.00 |

The trial court held that the damages were duplicative, set aside the awards for trespass, and entered judgment for the Bethards for the actual and punitive damages for intentional infliction of severe emotional distress. The trial court also awarded the Bethards $24,025.67 as attorney fees. The corporation, Charles, and Douglas appealed, and the Bethards cross-appealed. We will speak of the corporation, Charles, and Douglas collectively as the Shivvers.

We have considered all of the arguments of the parties, and we deal with such of them as are dispositive of the issues raised. The parties' other arguments do not change the result.

The Shivvers argue that the record does not contain substantial evidence to support the verdicts for intentional infliction of severe emotional distress, and that the evidence is also insufficient to find the corporation liable for punitive damages for trespass. They further contend that no basis exists for an award of attorney fees.

**44**

I. *Preservation of error.* The Bethards argue on two bases that the Shivvers did not preserve error: the Shivvers failed to move for a directed verdict at the close of all the evidence, and failed to raise the specific questions before the trial court that they now urge.

The Bethards are correct that error in overruling a motion to direct a verdict at the close of the plaintiffs' evidence is waived unless the motion is made again at the close of all the evidence. *Thomas Truck and Caster Co. v. Buffalo Caster and Wheel Corp.*, 210 N.W.2d 532, 535 (Iowa 1973); *Siebert v. State Farm Mutual Insurance Co.*, 251 Iowa 1060, 1064, 103 N.W.2d 757, 759 (1960). The question is whether the rule is applicable under the present record.

At the close of the Bethards' evidence, the Shivvers reserved the right to move for a directed verdict until the close of all the evidence, and the trial court granted permission. At the close of all the evidence, the Shivvers moved for a directed verdict. In a preliminary statement to that motion, their counsel stated:

> I believe everything I have to say at this time *will be* equally applicable to a motion for a directed verdict at the close of all the evidence.

(Emphasis added.) The Bethards contend that by using the words "will be" instead of "to be", the Shivvers made the motion that followed applicable only to the close of plaintiffs' evidence. This contention is overly technical, and we reject it.

The Bethards also claim that the Shivvers presented general issues to the trial court in regard to intentional infliction of severe emotional distress and the liability of the corporation, but now attempt to present specific issues. Such a general-to-specific move is not permissible. Iowa R.Civ.P. 216; *Miller v. Young*, 168 N.W.2d 45, 49–50 (Iowa 1969).

The record, however, does not support the Bethards' argument. In their motion for a directed verdict, the Shivvers presented the issues with sufficient speci-ficity to preserve them for appeal. We find that the issues now raised were adequately preserved.

II. *Emotional distress.* The trial court submitted for jury consideration the tort of intentional infliction of severe emotional distress. The Shivvers contend this was error for two reasons: the record does not contain substantial evidence of emotional distress of the severity that is necessary to give rise to this tort, and the conduct in question was something less than of the extreme and outrageous nature which this independent tort requires.

The evidence must show extreme emotional distress. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46, Comment j (1965). *See Harsha v. State Savings Bank*, 346 N.W.2d 791, 801 (Iowa 1984) (evidence of being "downhearted" and "depressed" is not evidence of severe distress); *Poulsen v. Russell*, 300 N.W.2d 289, 297 (Iowa 1981) (evidence that plaintiff was feeling as if he "had lost everything" falls short). *Cf. Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976) (plaintiff was nauseous, had difficulty breathing, and suffered acute myocardio ischemia); *Randa v. U.S. Homes, Inc.*, 325 N.W.2d 905 (Iowa App.1982) (hospitalization of plaintiff with near nervous breakdown).

In a particular case the trial court determines in the first instance whether severe emotional distress can be found. *Poulsen v. Russell*, 300 N.W.2d at 296; Restatement (Second) of Torts § 46, Comments h, j. When we review such a determination, we must view the evidence in a light most favorable to the nonmoving party, *Poulsen v. Russell*, 300 N.W.2d at 296, the same way the trial court views the evidence. *Meeker v. City of Clinton*, 259 N.W.2d 822, 828 (Iowa 1977).

The record lacks substantial evidence that the Bethards suffered "severe" emotional distress. The Bethards were angry and lost sleep, Harry "quivered" when the subject came up, and Elouise worried

whether people thought she owned a "junk farm." As in *Harsha*, the evidence is simply insufficient of the severe distress which is essential to give rise to this distinct and independent tort.

This basis of liability should not have been submitted to the jury for decision as to any of the defendants. We thus have no occasion to decide whether the Bethards developed a jury question on outrageousness.

III. *Punitive damages.* On the trespass count, the corporation contests the award of punitive damages against it. The argument is that no substantial evidence was adduced that either Charles Shivvers or Jack Hyde was an employee of the corporation at the time of the acts in question, as required to make the corporation liable under respondeat superior. In this connection, a question also exists as to the sufficiency of the evidence of complicity to permit punitive damages of the corporation. The corporation argues separately that in any event the conduct involved does not rise to the level of malice for an award of punitive damages.

■ A. Under appropriate circumstances a plaintiff may be entitled to both actual and punitive damages in a trespass case. *Hagenson v. United Telephone Co. of Iowa*, 209 N.W.2d 76, 82 (Iowa 1973); *Hagenson v. United Telephone Co. of Iowa*, 164 N.W.2d 853, 857 (Iowa 1969).

■ 1. As to respondeat superior and complicity, a corporation is liable for the tortious conduct of its employees, *Burr v. Apex Concrete Co.*, 242 N.W.2d 272, 277 (Iowa 1976), and this includes liability for punitive damages under circumstances of complicity set out in section 909 of the Restatement (Second) of Torts (1979). *See Briner v. Hyslop*, 337 N.W.2d 858 (Iowa 1983). Three of those circumstances are: authorization by the principal of the act; an agent in a managerial capacity; or ratification or approval of the act.

■ This case presents an additional factor. When an employee of a corporation is borrowed by another business, as oc-

curred here, an issue of fact may arise as to whether the employee becomes a "borrowed servant." *Hassebroch v. Weaver Construction Co.*, 246 Iowa 622, 627, 67 N.W.2d 549, 552 (1954). " 'A general employee of one employer who has been temporarily loaned to another for a special service does not become the employee of the borrower unless the original employer surrenders full control over the servant so that the servant is under the control and direction of the borrower in the performance of the particular act.' [35 Am.Jur. § 541, at 970 (1941).] [T]he control necessary to make the borrower the master must be something more than a right to point out the work to do." *Anderson v. Abramson*, 234 Iowa 792, 794, 13 N.W.2d 315, 316 (1944). Other factors to consider in determining the status of an employee include the "whose business test", the right of discharge, responsibility for payment of wages, and the intent of the parties. *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 505 (Iowa 1981); *Burr v. Apex Concrete Co.*, 242 N.W.2d at 276–77; *Anderson*, 234 Iowa at 795, 13 N.W.2d at 316.

■ In this case the evidence shows that Charles Shivvers owned several farms and also a separate corporation which manufactured grain drying equipment. He actively managed both endeavors. He often used the same employees in both businesses, and he freely transferred funds between the businesses as circumstances required. Outwardly, the businesses often appeared to be one, though inwardly account books were maintained separately and legally the two businesses were independent.

Evidence pertaining to Jack Hyde shows that he was paid different rates for working in the factory and for working on the farms. Time sheets submitted to the corporation indicated the number of hours worked in each business. During 1979, however, he received paychecks only from the corporation; he also received only one W–2 tax form. Internal records show that the farm operation reimbursed the corpora-

tion for its labor costs. Hyde testified that he understood he was solely an employee of the corporation but was instructed by Charles to do whatever farm work Douglas requested. On the days in question, his mileage expenses to the Bethards' property to move baled hay were paid by the corporation. The Steiger tractor he used was purchased by the farm operation.

Upon considering the evidence of all the activities of Charles Shivvers, both generally and with respect to this incident, and the activities of Hyde with respect to the corporation and this incident, and upon viewing such evidence in the light most favorable to the Bethards, we conclude that a question of fact existed as to the liability of the corporation for punitive damages for trespass under respondeat superior and under the further complicity requirement in *Briner v. Hyslop*. We thus reject the Shivvers' argument that the verdicts against the corporation for punitive damages must be overturned.

■ 2. We also have an evidentiary question to consider on this branch of the case. During the course of Hyde's testimony, the Bethards introduced into evidence two unsigned affidavits. The affidavits had been prepared by the Shivvers' attorney for signature by Hyde and were intended to support a motion for summary judgment made on behalf of the corporation. The corporation had maintained that it was not liable for any damages to the Bethards because at the time the damage occurred none of the actors was its servant. At trial the Bethards intended to use the unsigned affidavits as evidence that the statements were false. The corporation argues that the unsigned affidavits were immaterial, irrelevant, and prejudicial. The first affidavit states in pertinent part:

I, Jack Hyde, ... state that I was formerly employed at Shivvers Enterprises, Inc., and also by Charles Shivvers for work on farms he owns; that ... each time [I moved hay across the Bethards' property] I was employed by Charles Shivvers to do work related to his farm operation and paid by check from the farm account; ... that at all times when I was on the property of the Plaintiffs, I was performing work for Charles Shivvers and the farm operation and at no time was I on or at the Bethards' property in my capacity as an employee for Shivvers Enterprises, Inc., now known as Shivvers, Incorporated.

The second affidavit, essentially a revision of the first, states:

I, Jack Hyde, ... state that I have been previously employed by Shivvers Enterprises, Inc., and also by Charles Shivvers for work on farms he owns; that my time records were marked as to which I was working for and turned into the Accounting Office at Shivvers Enterprises, Inc.; that I was paid a different rate for the farm work; ... that each time I performed work for the farm operation I turned in my time separately for the work; ... that at all times when I was on the [Bethards'] property ... I was working for and at the direction of Charles Shivvers or Douglas Shivvers, and at no time was I on or at the Bethards' property in the capacity of an employee of Shivvers Enterprises, Inc....

The corporation relies on its claim that the affidavits were immaterial and irrelevant. It acknowledges that "[a] determination as to the relevancy and materiality of evidence rests largely in the trial court's discretion," *Trushcheff v. Abell-Howe Co.*, 239 N.W.2d 116, 125 (Iowa 1976); *Hagenson v. United Telephone Co. of Iowa*, 209 N.W.2d 76, 80 (Iowa 1973), but argues that the evidence is incompetent under the principle of *res inter alios acta*. That rule is stated thus in 29 Am.Jur.2d *Evidence* § 299 (1967):

It is a general rule that *res inter alios acta*—that is, the acts and declarations of strangers to the parties to an action, or that the acts and declarations for, to, or affecting third-persons of one of the parties to an action—is incompetent as evidence.

This court applied the principle in *Brookins v. Brookins*, 230 Iowa 1272, 300 N.W.

540 (1941). In that case, an equity suit, a wife sued her husband for divorce on the ground of adultery. Letters to the husband from the "other woman" were admitted as evidence of adultery, but this court strongly hinted that the evidence would not have been admissible if the case had been tried to a jury.

*Brookins* is inapplicable here. We would have an analogous situation if Hyde had prepared the affidavits. He did not; Shivvers' attorney did. The present case, we find, falls within an exception that *res inter alios acta* applies "unless the party against whom the communications are tendered is in some way connected therewith or knew and approved their utterance." *Brookins*, 230 Iowa at 1275, 300 N.W. at 541 (citing 20 Am.Jur. *Evidence* § 958, at 807 (1939)).

The corporation also contends that the prejudicial effect of the affidavits outweighs any probative value. It points to the Bethards' argument that the affidavits, as prepared by the Shivvers' attorney, were somehow an attempt to bribe, intimidate, or improperly influence Hyde. We believe, however, that any such effect was adequately dispelled by a stipulation read to the jury by the corporation's counsel which explained how the affidavits were prepared.

The trial court did not abuse its discretion in admitting the affidavits into evidence.

We find no necessity to consider two other bases of corporate liability which the Bethards assert.

■ B. Can punitive damages be awarded at all against the corporation under the trespass count? In trespass, punitive damages are recoverable if "malice" is present:

"Malice" need not be actual ill will or hatred toward another. When that state of mind is present, there is actual malice. However, more commonly in cases of this kind, there is simply legal malice, which may be established by showing a wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights. We have also defined legal malice as the intentional commission of a wrongful act without just cause or excuse.

*Hagenson v. United Telephone Co. of Iowa*, 209 N.W.2d at 82.

■ We find the evidence insufficient to create a jury question that the actors conducted themselves with actual malice. The evidence is sufficient, however, that they acted with legal malice. Douglas was aware that Harry Bethards prohibited use of the field to transfer bales after the spring thaw began. On March 19, 1979, Douglas was aware that the temperature was near forty degrees and that the ground had begun to thaw. Hyde testified that when he left the grain drying plant on March 19 he had a good idea the field would be damaged. He stated, "Anyone who has driven a tractor should have known damage would be done." The evidence is sufficient that Douglas also knew the field would be damaged, although neither Hyde nor he knew how extensive the damage would be. Subsequently the Shivvers twice went to the Bethards' property to remove their tractor and to haul away their bales. In doing so they further damaged the field. To gain access to the field they also took down a chain and lock that Harry Bethards had placed across the gateway. The evidence supports a finding that the Shivvers' conduct was illegal, and that it was committed with reckless disregard of the rights of the Bethards.

The Bethards established a case of punitive damages incident to their trespass count.

■ IV. *Attorney fees.* The general rule is that attorney fees are not allowable in the absence of statute or an agreement by the party to be charged. *Smith v. Board of Supervisors of Des Moines County*, 320 N.W.2d 589, 593 (Iowa 1982); *Montgomery Properties Corp. v. Economy Forms Corp.*, 305 N.W.2d 470, 478 (Iowa 1981); *Frost v. Cedar County Board of Supervisors*, 163 N.W.2d 432, 434 (Iowa 1968), *rev'd on other grounds*, 324 N.W.2d

460, 464 (1982). The rule applies in trespass cases. *Sutton's Music Co. v. Top Music Co.*, 377 So.2d 1092, 1095 (Ala.Civ. App.1979); *Greenway v. Griffith*, 225 Ga. 632, 170 S.E.2d 423, 426 (1969); *Umbreit v. Chester B. Stem, Inc.*, 176 Ind.App. 53, 373 N.E.2d 1116, 1120 (1978); *Gewin v. Willamette Industries, Inc.*, 406 So.2d 730, 733 (La.Ct.App.1981); *DeFulvio v. Holst*, 239 Pa.Super. 66, 362 A.2d 1098, 1100 (1976).

The trial court awarded the Bethards $24,025.67 in attorney fees but did not explain its rationale for doing so. The Bethards argue the award is permissible under a "bad faith" exception to the general rule. They do not claim that the award is based on a statute or contract.

In Iowa, courts do not have power to make such an award unless authorized by statute or contract whether the case be at law or in equity. *Smith v. Board of Supervisors of Des Moines County*, 320 N.W.2d at 593; *Harris v. Short*, 253 Iowa 1206, 1210, 115 N.W.2d 865, 867 (1962). The allowance of attorney fees was error.

V. *Expert testimony.* During cross-examination of Harry Bethards, the Shivvers elicited testimony that the Bethards had a contractor named Benny Davis estimate the cost of repairing the damaged field. Harry Bethards testified that the estimate was $400.

Later the Shivvers called Davis as a witness. The Bethards objected on the ground that Davis had not been listed in answers to interrogatories as an expert witness expected to be called at trial. The trial court sustained the objection and refused to allow Davis to testify as an expert. It did, however, state it would allow Davis to testify regarding "testimony that was given by Mr. Bethards as to what was said about his estimate, I think that's not expert testimony."

The Shivvers now claim the trial court erred and that prejudice resulted from its sustention of Bethards' objection.

We find no necessity to decide whether the court erred. The error, if any, was without consequence. The key piece of evidence was that Davis estimated repair of the field at $400. That evidence was admitted for jury consideration despite the court's ruling. The Shivvers did not suffer harm.

VI. *Cross appeal.* The Bethards cross appeal and in doing so contend that the damages· awarded for trespass and intentional infliction of severe emotional distress were not duplicitous and that in any event the right of election rests with them, not with the trial court. Because of our disposition of the claim for intentional infliction of severe emotional distress, the cross appeal is moot. We sustain the cross appeal, however, to the extent of reinstating the trespass awards.

VII. *Disposition.* We remand the case to district court for a substituted judgment setting aside the verdicts for compensatory and punitive damages for emotional distress and the award of attorney fees, and reinstating the verdicts for compensatory and punitive damages for trespass, together with costs. Interest at ten percent is to be added to the compensatory damages for trespass from the date of commencement of the lawsuit until paid, and interest at the same rate is to be awarded on punitive damages for trespass from the date of the entry of the new judgment until paid. *Midwest Management Corp. v. Stephens*, 353 N.W.2d 76 (Iowa 1984).

Appellees' motion to amend brief is granted.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Justices concur except REYNOLDSON, C.J., who takes no part.