# IN THE COURT OF APPEALS OF IOWA

No. 14-0926
Filed July 9, 2015

**K.N.T., a minor, by MEGAN R. FOX, her parent
and next friend, and MEGAN R. FOX,**
    Plaintiff-Appellants,

**vs.**

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Cerro Gordo County, James M. Drew, Judge.

K.N.T. and her mother, Megan Fox, appeal following trial on their first-party bad faith claim against American Family Mutual Insurance Company. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Vance Jorgensen of Vance Jorgensen Law Firm, Mason City, Leslie Bailey and Karla Ann Gilbride for Public Justice, P.C., Oakland, California, and Gina C. Badding of Neu, Minnich, Comito & Neu, P.C., Carroll, for appellants.

Mark S. Brownlee of Kersten, Brownlee, Hendricks, L.L.P., Fort Dodge, for appellee.

Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

K.N.T. and her mother, Megan Fox, (the plaintiffs) appeal following trial on their first-party bad faith claim against American Family Mutual Insurance Company (American Family). The plaintiffs appeal the district court's grant of directed verdict on the issues of emotional distress damages awarded by the jury to K.N.T. and punitive damages authorized by the jury against American Family. They additionally appeal the district court's protective order and order to seal trial exhibits.

### I. Factual and Procedural Background

Eleven-year-old K.N.T. was involved in a serious accident as a passenger in an all-terrain vehicle (ATV) on a gravel roadway on July 2, 2010. She suffered a serious head injury and required intensive medical care. She was in the hospital for twenty-three days and incurred approximately $250,000 in hospital expenses. The drivers of the two ATVs involved in the accident were uninsured. Megan filed an uninsured motorist claim with her own insurance provider, American Family, through her attorney on August 30, 2010.

American Family's claims manager Roger Rhodes was responsible for the claim. The claim file notes reveal he first reviewed the claim on October 27, 2010. At that time he determined American Family should deny Megan's claim because he thought the incident was excluded from her policy due to the involvement of an ATV. He instructed a claims adjuster to send the plaintiffs a reservation of rights letter and referred to an exclusionary clause in one of American Family's policies to support the denial. However, the clause he relied on was in fact not included in Megan's uninsured motorist policy. American

Family sent the reservation of rights letter to Megan and incorrectly informed her that her policy included a clause that excluded her claim from coverage. Rhodes would later concede he did not review Megan's policy before determining the claim should be denied.[1] Rhodes returned to the claim on November 29, 2010. The claim file notes from that date indicate his expectation that an adjuster would formally deny the claim.

In December, Megan's attorney responded to American Family's reservation of rights letter. Her attorney explained that American Family's denial of the claim would be contrary to the provisions of her policy and included documentation showing K.N.T.'s accident did not fall within the exclusion. He quoted Megan's policy, clearly indicating it was different from the exclusion relied upon in the reservation of rights letter. The claims adjuster noted the receipt of the letter from Megan's attorney in the case file, but Rhodes would later admit he did not read it. When Rhodes failed to respond to the attorney's letter, the claims adjuster drafted a letter denying the claim in conformity with Rhodes's November 29 claim file note.

On January 13, 2011, Rhodes again addressed the plaintiffs' claim file. His only action was to approve the denial letter. He again failed to review the policy or the letter from Megan's attorney before doing so. On March 14, 2011, he opened Megan's claim file and entered his final note: "[D]enial. Claim is no longer being supervised."

---

[1] The exclusion Rhodes relied upon to deny the claim was an exclusion that he found in a generic policy that he presumed to be identical to Megan's. However, even the exclusion he found in the generic policy did not apply to uninsured motorist claims.

The plaintiffs filed suit on April 1, 2011. American Family maintained the insurance claim was not covered by Megan's policy. The plaintiffs then amended their complaint to add a tort claim of first-party bad faith. Prior to trial, the parties reached a settlement on the issue of coverage of the insurance claim. The case was scheduled for a jury trial on the bad faith claim.

In discovery, the plaintiffs requested several categories of documents from American Family. In particular, they requested state business plans, claims handling and training materials, and information on employee compensation. American Family moved for a protective order as to these three categories of documents, alleging they were developed at great expense, they included confidential and proprietary information, and their disclosure would be injurious to American Family's competitive stance in the insurance industry. The plaintiffs opposed the motion, but the district court granted the protective order. The protective order required the plaintiffs to maintain the confidentiality of the documents, but it permitted them to disclose the documents to anyone in furtherance of building their case. Anyone to whom they disclosed the documents was also subject to the protective order. Additionally, the plaintiffs were required to return the documents to American Family at the close of litigation. During the trial, many documents that were subject to the protective order were admitted as exhibits and became part of the record.

To establish their bad faith claim, the plaintiffs had to prove (1) there was no reasonable basis for American Family's denial of coverage and (2) American Family knew of or recklessly disregarded the lack of a reasonable basis for denying coverage. *See Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468,

475 (Iowa 2005). The district court granted summary judgment as to the first prong.[2] The jury was instructed to determine the second.

At the close of the plaintiffs' evidence, American Family moved for directed verdict as to emotional distress damages incurred by Megan, emotional distress damages incurred by K.N.T., and punitive damages. The district court reserved its ruling and, after American Family rested without presenting evidence, put the case before the jury.

The interrogatories submitted to the jury asked whether the second prong of the bad faith tort had been proved. The jury was also asked the amount of emotional distress damages, if any, to be awarded to each plaintiff. Lastly, it was asked to determine whether American Family's conduct "constituted willful and wanton disregard for the rights of the plaintiffs"—i.e. whether punitive damages should be awarded. It was not asked to determine the amount of punitive damages in the event it found such damages warranted.

The jury found the second prong of the bad faith test was satisfied—that American Family knew or recklessly disregarded the lack of a reasonable basis to deny the plaintiffs' claim. It awarded Megan $45,000 and K.N.T. $5000 in emotional distress damages. It found American Family's conduct to be willful and wanton. The plaintiffs moved for a partial new trial to determine the amount of punitive damages.

In the post-trial hearing on the parties' motions, confusion arose from the submission to the jury of the willful-and-wanton inquiry without an accompanying

---

[2] American Family has not contested the grant of partial summary judgment. It is therefore established American Family had no reasonable basis to deny the claim.

inquiry as to the proper amount of punitive damages. The plaintiffs believed the district court had previously agreed off the record to a "mini-trial" on the issue of punitive damages in the event the jury found willful and wanton conduct. American Family believed the record was closed, all evidence as to damages had already been presented, and there had been no agreement to a "mini-trial."

The district court acknowledged its error in submitting the willful-and-wanton interrogatory to the jury without a corresponding verdict form for the amount of punitive damages. The court stated it had been "as convinced as [it] could be" that the jury would not return an interrogatory finding willful and wanton conduct. The court stated on the record to plaintiffs' counsel it had not previously agreed to a "mini-trial."

In its March 24, 2014 rulings on the parties' motions, following the jury's verdicts, the district court granted American Family's motions for directed verdict as to the emotional distress damages award to K.N.T. and the award of punitive damages.[3] It denied the motion for directed verdict as to the emotional distress damages awarded to Megan. Because it granted directed verdict on the matter of punitive damages, it denied the motion for partial new trial.

On April 15, 2014, American Family filed a motion to seal the trial exhibits and requested an expedited hearing on the matter after it learned plaintiffs in other lawsuits and jurisdictions were accessing the court file and using the trial exhibits to build cases against American Family. The motion asked the district

---

[3] In the post-trial hearing, the district court voiced its belief that there was "a very real chance this jury awarded both actual and punitive damages in its [emotional distress] verdict."

court to seal any trial exhibit that fell within the previously granted protective order. The district court granted the motion to seal over the plaintiffs' objections.

The plaintiffs appeal the district courts grants of directed verdict, entry of a protective order, and entry of the order sealing the trial exhibits.

## II. Standard and Scope of Review

We review the district court's grant of a motion for directed verdict for errors at law. *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 849 (Iowa 2010). We review the ruling on the plaintiffs' motion for a new trial on the basis of the granted directed verdict for errors at law. *See Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007) (noting the standard of appellate review of a ruling on a motion for new trial is the same as the standard of review for the issue asserted as the underlying basis for that motion).

"When presented with an appeal from the grant of a directed verdict, we look for substantial evidence." *Figley v. W.S. Indus.*, 801 N.W.2d 602, 609 (Iowa Ct. App. 2011). If substantial evidence exists supporting each element of the claim, direct verdict is improper; however, if any element is not supported by substantial evidence, we will affirm the grant of a directed verdict. *See id.* In this context, evidence is considered substantial when "a reasonable mind would accept it as adequate to reach a conclusion." *Id.* (citation and internal quotation marks omitted). In short, "[we] must determine whether reasonable minds could differ on the issue presented; if so, the grant was inappropriate." *Royal Indem. Co.*, 786 N.W.2d at 849; *see Heick v. Bacon*, 561 N.W.2d 45, 47 (Iowa 1997) ("[W]e . . . determine whether the evidence generated a jury question."). In

search of substantial evidence, "[w]e view the facts in a light most favorable to the nonmoving party." *Id.*

We review decisions regarding discovery, including the entry of a protective order, for an abuse of discretion. *Comes v. Microsoft Corp.*, 775 N.W.2d 302, 305 (Iowa 2009); *see also* Iowa R. Civ. P. 1.504(1)(a).

The district court's post-trial order to seal portions of the court file is supported by Iowa Rule of Civil Procedure 1.504(1)(a)(7), which permits the district court to order for good cause "[t]hat . . . confidential research, development, or commercial information not be disclosed." Rule 1.504(1) rulings are reviewed for abuse of discretion. *See Comes*, 775 N.W.2d at 305. To any extent the issue takes on constitutional significance, our review is de novo in light of the totality of the circumstances. *See State v. McKnight*, 511 N.W.2d 389, 391 (Iowa 1994).[4]

**III. Directed Verdicts**

The plaintiffs first challenge the district court's grant of two of American Family's motions for directed verdict.

A. Emotional Distress Damages

The jury awarded Megan $45,000 in emotional distress damages arising from American Family's liability in tort for bad faith. *See Dolan v. Aid Ins. Co.*,

---

[4] American Family urges us to review the constitutional issue raised by the plaintiffs for an abuse of discretion rather than de novo. It cites only a Second Circuit case and no Iowa case as authority for its proposition. *See Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2014). *Newsday* does not support American Family's position. That case held as to the constitutional issues raised, "[W]e have traditionally undertaken an independent review of sealed documents, despite the fact that such review may raise factual rather than legal issues." *Id.* Additionally, the plaintiffs have raised the issue under both the United States *and* the Iowa Constitutions, so any case law applying strictly federal standards cannot fully answer the issue. We find no supporting authority for any standard of review but de novo on constitutional issues.

431 N.W.2d 790, 794 (Iowa 1988) (adopting the first-party bad faith tort "to provide the insured an adequate remedy for an insurer's wrongful conduct"). It also awarded $5000 to K.N.T. The district court granted American Family's motion for directed verdict as to K.N.T.'s claim for emotional distress damages. It found:

> There is no evidence in the record to indicate that [K.N.T.] experienced any type of compensable damages related to [American Family's] denial of coverage. The only evidence presented by K.N.T. was that she was bothered by the experience of having her deposition taken. However, the evidence fails to establish any significant harm or that the experience was related to the denial issue as opposed to the bodily injury claim.

We agree with the district court. The evidence of fifteen year-old K.N.T.'s emotional distress arising from the lengthy claims process as between her mother and American Family—distinct from distress arising from the trauma of the underlying accident in which she was involved—is not sufficient to show compensable damage. K.N.T.'s brief testimony at trial showed at worst a discomfort with the litigation process. It did not show emotional distress arising from the insurance claim process.

The plaintiffs argue "[a] jury could reasonably infer from [Megan's testimony about Megan's own distress] that Megan, *and by extension K.[N.]T.*, suffered emotional distress . . ." (emphasis added). We disagree. This proposed "extension" stretches Megan's testimony too far; it is not a product of inference, but of speculation. We decline to hold that testimony regarding one plaintiff's distress can, without more, be imputed to establish compensable distress in other plaintiffs. Neither K.N.T.'s testimony nor any other evidence in the record serves to extend her mother's testimony in such a way.

The plaintiffs lastly argue the district court erroneously applied a "significant-harm" standard, which they assert is a higher burden than the law requires. *See id.* (holding severe emotional distress is not required to recover in tort for first-party bad faith). However, the district court's use of the word "significant" in its analysis is not equal to the application of a heightened burden—i.e. a requirement of severe emotional distress—on K.N.T.'s emotional distress claim. We agree with the district court's characterization of the facts: an application of the proper standard reveals no evidence of compensable emotional distress suffered by K.N.T. as a result of American Family's denial of the insurance claim. We affirm the district court's grant of directed verdict as to the contested $5000 in emotional distress damages.

### B. Punitive Damages

We next consider the district court's grant of directed verdict on the issue of punitive damages. The jury was instructed that to establish a claim for punitive damages, the plaintiffs must show "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(1)(a) (2009). Conduct constituting willful and wanton disregard for the rights or safety of another is an intentional act that was unreasonable and "in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow." *See Miranda v. Said*, 836 N.W.2d 8, 34 (Iowa 2013) (citation and internal quotation marks omitted). An intentional act satisfying this standard is often "accompanied by a conscious indifference to the

consequences." *Id.* An actor's recklessness may indicate—but does not establish per se—willful and wanton conduct. *Id.*

Because punitive damages serve as a form of punishment for egregious behavior, they are "appropriate only when actual or legal malice is shown." *See McClure v. Walgreen Co.*, 613 N.W.2d 225, 230–31 (Iowa 2000). "Actual malice is characterized by such factors as personal spite, hatred, or ill will." *Id.* at 231. "Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights." *Id.*

*1. Generation of a Jury Question.* We do not agree with the district court's conclusion that the plaintiffs failed to generate a jury question as to whether American Family willfully and wantonly disregarded the plaintiffs' rights or safety. The record reflects American Family's claims supervisor, Rhodes, reviewed the plaintiffs' claim at least four times between October 27, 2010, and March 14, 2011. Each time, he maintained the claim should be denied and took action in furtherance of denying it. At trial, he conceded that he did not read the plaintiffs' policy before concluding he would deny the claim on his first review.[5] He then consciously determined the claim should be denied on at least three additional occasions despite the plaintiffs' submission of documents showing the policy provided coverage and showing the extent of K.N.T.'s medical expenses. His conduct in this matter is imputed to American Family. *See Bethards v. Shivvers, Inc.*, 355 N.W.2d 39, 45 (Iowa 1984) ("[A] corporation is liable for the tortious

---

[5] His testimony at trial was that he read a generic auto policy—not the plaintiffs' policy. He saw an exclusion in the liability portion of the generic policy he thought would allow him to deny the plaintiffs' uninsured-motorists claim.

conduct of its employees, . . . and this includes liability for punitive damages . . . .").

The evidence of Rhodes's handling of the claim alone is sufficient for a reasonable mind to conclude American Family's denial was in willful and wanton disregard for the rights of the policy holders and K.N.T.'s medical well-being. The risk of wrongly leaving Megan in dire financial straits under the weight of the submitted medical bills and the risk of K.N.T. being unable to receive further treatment are obvious. Rhodes's intentional acts of repeatedly denying the claim without even confirming the terms of the controlling policy could be deemed unreasonable and highly probable to cause harm. The evidence is sufficient to generate a jury question; the district court's grant of directed verdict was therefore improper.

*2. Pay-For-Performance Program.* A hotly contested issue related to the punitive-damages claim is the evidence presented at trial of American Family's "pay-for-performance" program, which provides financial incentives to employees like Rhodes. One element of the program's incentives involves employees' management of "claim severity," which refers to the amount of funds American Family pays out on its policy-holders' claims. The plaintiffs submitted evidence of the program as supporting circumstantial evidence of willful and wanton behavior. The evidence may give rise to an inference Rhodes was incentivized to deny the plaintiffs' claim or approach the claim with the goal of denying it because the denial would reflect favorably on his claim severity metrics and result in additional pay for him.

The district court found the program is "endorsed" as an industry-standard practice. However, whether a practice is industry-standard or endorsed within that industry is not dispositive of whether its implementation constitutes willful and wanton behavior. Even if the program's standard-practice status were relevant to this determination, there remains the jury question of whether Rhodes's denial was willful and wanton without regard for the compensation program in the context of his superficial consideration of the claim.

American Family further argues evidence of the program bears only upon American Family's own willful and wanton behavior as a respondeat superior principal—i.e. the evidence has no bearing on *Rhodes*'s decision to deny the claim. However, American Family's argument ignores the reasonable inference that the pay-for-performance program created a work environment in which Rhodes's instinctual inclination would be to deny claims if a cursory review appeared to allow him to do so. Such an inference should be made or rejected by a jury. Evidence of the program does not undermine our conclusion that a jury question was generated.

*3. Malice.* American Family repeats throughout its brief that Rhodes's denial was a simple mistake made hastily and carelessly but with no malice or ill-will. The district court based its conclusion in part on the fact "the plaintiffs' expert testified that Roger Rhodes did not act intentionally or maliciously when he denied coverage."[6] First, we note Rhodes's act of denying coverage was

---

[6] On cross-examination, the plaintiffs' expert, Robert Dietz, testified:
> Q: You don't think [Rhodes's denial of the insurance claim] was malicious on his part do you? A: No, I don't.

indisputably intentional, even if he did not intentionally deny a *valid* claim. Second, both the district court and American Family fail to address that actual malice is not required to generate a jury question as to punitive damages. Legal malice—"wrongful conduct committed or continued with a willful or reckless disregard for another's rights"—is sufficient. *McClure*, 613 N.W.2d at 231. Because Rhodes's denial of coverage continued and the decision to deny the claim was repeated multiple times between October of 2010 and March of 2011, there is evidence of legal malice, putting the question of punitive damages to the jury.

*4. Recklessness and Conscious Indifference.* American Family lastly argues Rhodes did not exhibit a conscious indifference to the consequences of his actions. *See Miranda*, 836 N.W.2d at 34. It also concedes Rhodes's denial of the plaintiffs' claim could be deemed reckless,[7] but it goes on to rely heavily on the fact that conduct can be reckless without being willful and wanton. *See id.*

---

Q: You don't think it was personal? A: No, I don't. I mean, there was even a document that was in his file showing the escalation of [uninsured motorist] claims . . . right around the time this was denied[.] [T]he coincidence of this claim being denied while this escalation of [uninsured motorist] claims is increasing right around the time that his end-of-the-year performance is due . . . . [I]t looks coincidental, but I—I just don't want to connect the dot there because I don't think that happened.

Q: That would be unfair, wouldn't it? A: Well I don't know if it would be unfair. It's not my call to make, number one, and, number two, yeah, you'd have to be really, really, really evil, mean-spirited to do that.

Q: And you're not accusing him of that, are you? A: No, I'm not.

Q: And you don't claim that he intentionally made a mistake? A: I think if anything it's intent by design of this [pay-for-performance] program. I think it's a result of a program that overemphasizes thought and focus on numbers and bottom line rather than doing the job he was supposed to do.

[7] In its brief, American Family concedes, "Mr. Rhodes acted hastily and improvidently in denying coverage . . ." and "Mr. Rhodes'[s] mistake was hasty or careless, arguably even reckless . . . ."

Neither recklessness nor the conscious indifference element of the punitive damages analysis is determinative, and both considerations should therefore be left to the fact-finder. *See id.* (noting willful and wanton behavior "is *usually* accompanied by a conscious indifference" and recklessness "*may* include willfulness or wantonness" (emphases added)). Neither consideration diminishes the jury question generated by Rhodes's repeated denials of coverage.

*5. Remedy.* In sum, we disagree with the district court's conclusion that "[t]he only way a fact finder could legitimately conclude the plaintiffs had met their burden would be to engage in heavy speculation." The evidence of Rhodes's multiple reviews of the claim, failure to review the plaintiffs' actual policy, and continued denial of a valid claim in the face of documentation showing the consequences of his failure to cover the claim could constitute clear, convincing, and satisfactory evidence of willful and wanton behavior to a reasonable fact-finder. *See Figley*, 801 N.W.2d at 609. The record gives rise to fair and reasonable inferences to reach such a conclusion; no "heavy speculation" is required. The grant of directed verdict and denial of the plaintiffs' motion for a new trial on this issue was error.

Having concluded the grant was error, we must determine the proper remedy. We reverse the district court's grant of directed verdict and remand for a new trial. The proper scope of the new trial is disputed by the parties. The plaintiffs request we remand for a new trial limited to the question of the amount of punitive damages to be awarded. American Family requests we remand for a new trial on "all issues of liability and damages."

"The general rule is that when a new trial is granted, all issues must be retried." *McElroy v. State*, 703 N.W.2d 385, 389 (Iowa 2005). However, "[a] new trial need not be granted on the whole case if the court's error . . . is limited to certain issues." *In re Marriage of Wagner*, 604 N.W.2d 605, 609 (Iowa 2000). In this case, the jury's finding of bad faith and its award of emotional distress damages to Megan are not challenged on cross-appeal by American Family; we therefore find the issues of liability and damages beyond those raised on appeal "have been rightly settled[,] and injustice will not be occasioned" by limiting the new trial to the issue of punitive damages, the subject of the district court's error. *McElroy*, 703 N.W.2d at 389 (quoting *Larimer v. Platte*, 53 N.W.2d 262, 268 (Iowa 1952)). We therefore remand for a new trial limited to the matter of the amount of the punitive damages to be awarded.

### IV. Discovery and Sealed Record Motions

The plaintiffs next challenge the district court's pre-trial protective order and its post-trial order sealing the trial exhibits.

A. Protective Order[8]

Iowa Rule of Civil Procedure 1.504(1) provides, "Upon motion by a party . . . and for good cause, the court . . . [m]ay make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." The rule grants "[a] trial court . . . wide discretion to enter a protective order." *Comes v. Microsoft Corp.*, 775 N.W.2d 302, 305 (Iowa 2009). The party seeking the order must make a particular and specific demonstration of fact to establish good cause. *See id.* Stereotyped and conclusory statements are not sufficient. *Id.*

> A district court should consider three criteria when evaluating the factual showing establishing good cause: (1) whether the harm posed by dissemination will be substantial and serious; (2) whether the protective order is precisely and narrowly drawn; and (3) whether any alternative means of protecting the public interest is available that would intrude less directly on expression.

*Id.*

The plaintiffs argue American Family's motion and supporting affidavit were merely stereotyped and conclusory statements that did not satisfy the requirements of a properly entered protective order. We disagree. American

---

[8] As preliminary considerations, American Family argues the issue of the district court's protective order is either moot or not preserved for our review. We disagree. The issue is not moot because the protective order remains in force for further proceedings on remand, and there remains a justiciable controversy. *See Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 442 (Iowa 1983). The issue is preserved for our review because the plaintiffs resisted the protective order on the grounds it asserts on appeal, and the district court's protective order rejected those assertions. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (holding issues both raised and decided by the district court are preserved for appellate review). American Family asserts the plaintiffs were required to challenge the protective order on an individual-document basis to preserve error on each specific document, but it cites no authority for its assertion. Such a mechanical requirement would not serve the policy behind our rules of error preservation, and we therefore reject American Family's error-preservation claim. *See DeVoss v. State*, 648 N.W.2d 56, 60–63 (Iowa 2002).

Family asserted in its motion, "The documents are proprietary and/or confidential in nature inasmuch as they relate to procedures and policies developed and adopted by [American Family] over a period of years at substantial expense and are not intended for dissemination to or utilization by any person or entity outside the company." In its supporting affidavit, American Family's policy and procedure manager David Spahos noted the contested documents fell into three categories: state business plans, claims handling material, and documentation regarding employee compensation programs. He averred the documents in all three categories were developed in confidence and for proprietary purposes. He asserted competitors' access to American Family's documentation would be to the advantage of those competitors—i.e. to American Family's detriment in the marketplace.

The district court noted the plaintiffs' assertion that American Family did not make a particularized showing. It nevertheless found the asserted proprietary matters should be subject to a protective order. In addition, it rejected the terms of American Family's proposed protective order and instead crafted its own terms, which permitted the plaintiffs to freely use the documents in making their case. Because American Family pleaded a specific harm and the district court tailored its protective order, the entry of the order was within the court's discretion.

The plaintiffs' case citations on this issue are distinguishable—they deal largely with trade secret classifications, which was not an element of the district

court's reasoning in the case before us.[9]  *See Mediacom Iowa L.L.C. v. Inc. City of Spencer*, 682 N.W.2d 62, 68 (Iowa 2004) (reviewing a district court order holding that the protected documents were trade secrets); *State ex rel. Miller v. Publishers Clearing House, Inc.*, 633 N.W.2d 732, 740 (Iowa 2001) (reversing a protective order granted based on a trade secrets holding); *see also State ex rel. Miller v. Nat'l Dietary Research, Inc.*, 454 N.W.2d 820, 824 (Iowa 1990) (reviewing protective order issued with "no reasons").

We affirm the district court's protective order.

### B. Order Sealing Trial Exhibits

The plaintiffs challenge the district court's post-trial order sealing the trial exhibits that fell within the scope of its protective order.  American Family argues the plaintiffs have failed to allege any injury they have suffered as a result of the order sealing the trial exhibits.  Without an injury in fact, the plaintiffs lack standing to challenge the order.  *See Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 867–68 (Iowa 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In the plaintiffs' appellate brief, they allege that "[t]he public has a First Amendment right to access the exhibits presented to the jury at trial."  However, plaintiffs may not establish standing by "assert[ing] a right to represent the

---

[9] We agree with the plaintiffs that American Family has waived its many arguments on appeal asserting the protected documents contain trade secrets.  Trade secrets are subject to a statutory definition.  *See* Iowa Code § 550.2(4).  American Family did not assert below that the documents contained trade secrets, nor did the district court analyze the statutory requirements or issue any findings those requirements were satisfied.  The issue is therefore waived.  *See Meier*, 641 N.W.2d at 541.

general public rather than to identify their individual interests." *Id.* at 870. The plaintiffs' initial appellate brief fails to allege any individual interest.

In their reply brief, the plaintiffs cite a single non-binding federal court decision,[10] which holds "parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order." *Oklahoma Hosp. Ass'n v. Oklahoma Publ'g. Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984). We first note the plaintiffs had not previously asserted an injury to this purported constitutional right either before the trial court or in its initial brief on appeal.[11] Additionally, in light of our holding that the district court's protective order was properly issued as within its discretion, the plaintiffs' asserted right as described by the Tenth Circuit Court of Appeals is preempted by the valid protective order. *See id.*

The plaintiffs seek a decision in which Iowa both "join[s] its sister jurisdictions in holding that documents that have been made part of the record at trial can only be sealed if strong countervailing interests overcome the presumption that such judicial records are public" and explicitly applies First Amendment right-of-access principles to civil cases. However, "these plaintiffs are [not] the proper parties to bring the action." *See Alons*, 698 N.W.2d at 870.

---

[10] No other case cited by the plaintiffs—including their additional authorities submitted prior to oral arguments—speaks to the plaintiffs' assertion of injury to their own individual interests caused by the order to seal.

[11] The plaintiffs claimed in oral arguments before this court they had asserted their own individual injury in their resistance to American Family's motion to seal. However, our review of the record reveals the plaintiffs made no such assertion either in their briefing to the district court or during the post-trial hearing on the motion. The plaintiffs' resistance to the motion to seal was predicated only upon the public's right of access, not the plaintiffs' purported right to disseminate information obtained in discovery.

**V. Conclusion**

Regarding the district court's grants of directed verdict, we affirm the grant as to K.N.T.'s emotional distress damages.  We reverse the grant as to punitive damages and remand for a new trial limited to the determination of the proper amount of punitive damages to be awarded.

Regarding the district court's protective order, we find the order was within the court's wide discretion and affirm.  Because the plaintiffs have failed to demonstrate that they have standing to challenge the post-trial order sealing trial exhibits, we affirm.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**